## Batrus' Appeal.

588

Argued October 28, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Robert C. Haberstroh,* with him *Amos Davis,* for appellant.

*Thomas C. Hare,* with him *Robert F. Hare,* for appellee.

OPINION BY RHODES, J., April 29, 1942:

This is an appeal from an order of the court of common pleas reversing an order of reinstatement made by the Superintendent of Public Instruction, and affirming the action of the Board of School Directors of the

School District of the City of Altoona in its dismissal of appellant, a professional employee of that district.

The charges against appellant, who was elected as a teacher in the school district in 1935, were incorporated in a resolution adopted by the board on August 5, 1940. As the sufficiency of the charges is the principal question involved on this appeal, the material portions of the resolution are printed in the margin.[1] Clause (a) of section 1205 of the School Code, Act of May 18, 1911, P. L. 309, as amended by the Act of June 20, 1939, P. L. 482, §2, 24 PS §1126(a), provides in part as follows: "The only valid causes for termination of a contract entered into with a professional employe in accordance with the provisions of this section shall be—immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe." A copy of the charges and notice of the time fixed for hearing thereon were given to appellant. After hearing, the board determined that the charges had been substantiated by the evidence, and appellant was, by resolution adopted by the board, discharged as a teacher of the school district. Of this action appellant was duly notified.

Appellant then appealed to the Superintendent of

---

[1] "Because of information which has been presented to the Board of Directors of the School District of the City of Altoona and of investigation of that information, it appears that Iva G. Batrus, a professional employee of the school district, being a teacher in the Senior High School of the school district, and having been continuously a teacher therein during the last five years, has, during a period of four or more years immediately prior hereto, been engaged in a business incompatible and inconsistent with the office of a teacher in the public schools of the Commonwealth of Pennsylvania, she during that period being a licensee of the Commonwealth of Pennsylvania to distribute malt beverages and she during that period being the owner of and conducting and operating the business under the fictitious name of General Beverage Company, her place of business being now

Public Instruction who, after hearing had and the introduction of additional testimony on behalf of appellant, reversed the board and directed the reinstatement of appellant. Without expressing any opinion on the merits, the superintendent sustained the appeal and reversed the board for the reasons that appellant's dismissal was not based on one or more of the grounds specified for the dismissal of a professional employee under the provisions of the School Code, 24 PS §1126 (a), and that "appellant in the instant case was not specifically charged with either incompetency or immorality." Thereupon, the school district appealed from the decision of the Superintendent of Public Instruction to the Court of Common Pleas of Blair County. That court reversed the order of the superintendent, sustained the action of the board of school directors, and made an order directing that appellant be discharged on the ground that she was charged with, and was guilty of, immorality. This appeal was then taken by the teacher, Iva G. Batrus, from the order of the court below.

Appellant contends that the court below erred in holding that she had been charged with immorality in the statement of the charges which had been served upon her. The argument on behalf of appellant is to

located at 1926—Eighth Avenue, in the city of Altoona, and that she has not advised the board of directors of the school district, during her employment as a teacher, that she has been engaged in any other occupation, and that she has misrepresented to the Commonwealth of Pennsylvania, in her application for license to distribute malt beverages, that she is not engaged in any other business, that no other person is pecuniarily interested therein and no other person will be so interested during the continuance of her beverage license, and that the operations of the General Beverage Company, owned and conducted by her, have been and are being investigated by the Commonwealth of Pennsylvania because of alleged violations of law, all of which are and may become prejudicial to the welfare of the school district and its pupils."

the effect that it was not only necessary to aver the operative facts, but that it was also necessary to incorporate in the statement of the charges the word "immorality"; and that appellant should have been charged with immorality, and then given the facts upon which the charge was based. We think this argument is captious and without merit. Immorality was sufficiently averred if the written statement of the charges served upon appellant set forth such conduct on her part as "offends the morals of the community," and was "inconsistent with moral rectitude." *Horosko v. Mount Pleasant Township School District et al.*, 335 Pa. 369, 372, 373, 6 A. 2d 866. The court below in its opinion has concisely and accurately disposed of appellant's argument in this connection: "The word 'immorality' could have been inserted in the resolution, but it would not have changed the substance of the charges with regard to misrepresentations, false statements, and deception. Nor would it have enlarged Miss Batrus' opportunity to present her defense at the hearing. As it was she was present and represented at the hearing by able counsel, and was given the benefit of every available defense under the Tenure Act. The mere failure of the school board in this action to insert the word 'immorality' in the notice of charges against her should not defeat the purpose of the law which is designed to give the school board authority to maintain the moral and intellectual standards of teachers."

Appellant next contends that, even if the proper procedure had been followed, the facts as they have been presented upon the record do not support a charge of immorality. The material facts are not in dispute. Appellant was elected a teacher on July 12, 1935, and entered upon her employment at the opening of the school term in September of that year. Her service was continuous until the close of the school term in June, 1940. Prior to the time that she was elected a teacher, appellant, under the name of I. G. Batrus, had

registered in the office of the Prothonotary of Blair County her business under the fictitious name of General Beverage Company. In 1935 she applied for a transfer of a malt beverage license and for an original license. In each successive year thereafter, including the year 1940, she applied for a distributor's license. The various applications for license contained statements as required by the law that the applicant was not engaged in any other business; that there was not any person other than herself financially interested in the business; and that no other persons would be so interested during the continuance of the license. Her affidavits as to the truth of these averments accompanied the applications, which were offered in evidence.

The finding by the court below that appellant was guilty of immorality is largely based on appellant's own testimony.[2]

In her testimony she admits that the statements in her affidavits were false; that she procured the licenses for the benefit of her father; that she procured them in

---

[2] She testified: "Q. When this license was taken, this license that is here referred to, will you state whether or not you were actively engaged or connected with that business? A. Never—I never had the slightest thing to do with it; never wanted to know anything about it. ...... Q. Were you connected in it insofar as the public was concerned? A. The only connection I ever had was to sign those papers. Q. Did you derive any profit from the business? A. No. Q. Did you lose any money—did it take money from you? A. I had no connection with it at all. ...... Q. And you state under the oath that you have taken here this afternoon that you have never had any connection with the business other than to sign the applications that have been signed by you? A. Yes. ...... Q. In other words, you did invest in the business and you put money in the business, is that right? A. I gave my father some money, yes. Q. For what purpose? A. For him to get the license. ...... Q. Why is it you gave your father the money? A. Because he needed it. Q. And that was the money on which the business was started? A. Some of it, part of it. ...... Q. He did all the buying, all the selling, all the banking and everything else? A. Yes, sir.

her own name for the purpose of misleading the Liquor Control Board.

The fact that what appellant did may have been for the benefit of others and not for her own profit may be a mitigating circumstance, but unfortunately this did not eradicate the result or change the complexion of her acts. Whether she actually engaged in the operation of the business is immaterial, but appellant should be consistent in her position. It is set forth in her brief that she was not at any time actively or passively engaged in the business of the General Beverage Company, and that she had no interest in it, while it is also said therein that with her own money she solely and entirely acquired the business, acquired the license, and conducted the business. We think it is self-evident that the conduct of a teacher, which is subversive of those stand-

Q. Well what became of the proceeds? A. Well, he took care of that as well. Q. In other words, he got it all? A. Yes. Q. You didn't get any?—Never even got any of the profits of the business or any of the money that you invested in the business? A. No. ...... Q. Did it ever occur to you that in each of these affidavits you swore as a fact, took an oath to the fact and represented to the Liquor Control Board that there was not any other person financially interested in that business but you? A. I don't remember of having seen that. Q. You don't? A. No, I signed that without reading it. ...... Q. And then we have your affidavit to a number of official papers that you got nothing out of this business though it was yours and conducted in your name, and the profits went to somebody else, notwithstanding the fact that you say there were not any persons other than yourself financially interested, and that no other person would be—that was perfectly all right to you too, was it? A. Yes. ...... Q. Isn't it a plain fact of the matter that it was your father's business and you allowed yourself to be used for his own profit? A. Yes. ...... Q. Wasn't it because your father couldn't get a license that you agreed that the license should be taken in your name?—He couldn't get a license because of the large number of judgments against him? A. That is right. Q. And in order to secure the license for him you agreed to take it in your name so the Liquor Control Board wouldn't know the reason for it, was that the idea? A. That is what I did."

ards of moral rectitude which the law has established both for government and social conduct, is not conducive to the maintenance of the integrity of the public school system. In the opinion of the court below it is well said: "The profession of teaching is one of the most honorable and highly respected callings in the world. As a general proposition the teachers live up to the high standards of their profession and they are respected and held in high esteem by the communities which they so faithfully serve. A teacher whose ideals of right and wrong are so lax as to permit her to pursue a course of conduct consisting of false affidavits, misrepresentations, withholding important information from her employer, especially when the public is her employer, misrepresenting her true status for the purpose of misleading the Liquor Control Board of the Commonwealth of Pennsylvania is guilty of 'such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate' and therefore immoral."

The evidence clearly sustains the charge of immorality as found by the court below.

Appellant questions the correctness of the statement of the court below that the hearing on appeal before the court was a de novo proceeding. We agree that there was no hearing de novo in this case, but we do not think that this statement has any material significance. As we said in *Spruce Hill Township School District v. Bryner*, 148 Pa. Superior Ct. 549, at page 552, 25 A. 2d 745, at page 747: "The appeal to the court of common pleas was taken by the board, and there was no hearing de novo. The court, however, was not bound by any finding of fact or conclusion of law of the Superintendent of Public Instruction any more than the superintendent was obliged to accept any action of the board. The scope of review given to both the Superintendent of Public Instruction and to the court of common pleas

is clearly indicated in clause (j) of section 1205 of the School Code, as amended by the Act of June 20, 1939, P. L. 482, §2, 24 PS §1126(j)."

Appellant finally argues that the school board prejudged the charges against her prior to the hearing and final consideration of the testimony presented before it. This matter is not referred to in, or comprehended by, the statement of questions involved, and therefore will not be considered *(Appeal of Braddock Township*, 148 Pa. Superior Ct. 52, 24 A. 2d 705; *Kennedy v. Holmes Construction Co. et al.*, 147 Pa. Superior Ct. 348, 24 A. 2d 451) except to say that in our opinion after an examination of the record appellant's contention is without substance or merit. The finding of the court below that "the record in this case conclusively shows that the school board acted with sound discretion, with impartial and unbiased judgment, with the purpose only to promote the welfare of the community which it serves" was fully justified.

The court below did not err in reversing the order of the Superintendent of Public Instruction and directing that appellant be discharged as a professional employee of the school district. The findings of fact, supported by competent evidence, support its order. *Lane's Appeal*, 141 Pa. Superior Ct. 259, 262, 14 A. 2d 573.

The order of the court below is affirmed, at the cost of appellant.