Kehoe, Appellant, *v.* Kehoe-Berge Coal Company.

Argued January 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Joseph E. Gallagher,* with him *William P. Farrell,* and *O'Malley, Morgan, Bour & Gallagher,* for appellant.

*James T. Shea,* with him *Shea & Shea,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 18, 1957:

The plaintiff seeks to have the Court extricate him from a situation and status which he accepted voluntarily and for a consideration. Under the circumstances of the case, he has assigned himself an impossible task. On October 15, 1944, he entered into a contract with the Kehoe-Berge Coal Company and Pittston-Duryea Coal Company, whereby a previous contract dated April 17, 1943 was to be cancelled and he was to receive $500 per month so long as the companies produced coal from certain specified lands.

The agreement carried the provision that: "It is agreed by and between the parties that this agreement is personal to Kehoe and may not, in whole or part, be assigned, transferred, or sublet, by act of Kehoe or by operation of law, without the Companies consent in writing first being obtained."

On January 23, 1948, the plaintiff assigned his rights under the contract to his wife, Grace Houser Kehoe, the assignment being witnessed by John C. Kehoe, Jr., and John C. McNamara, president and secretary-treasurer of the defendant company. On the same day John C. Kehoe, president of the company, on defendant company's stationery, wrote Mrs. Kehoe confirming the assignment. From January, 1948 to April, 1952, the defendant company made payments to Mrs. Kehoe in accordance with the terms of the contract. On July 26, 1953, Mrs. Kehoe, for a consideration of $15,000, assigned the contract to certain trustees who, in turn, assigned the contract to the defendant.

Two years after this last transaction, and five years after he had assigned to his wife the benefits of the contract of October 16, 1944, the plaintiff decided to turn back the clock, so that he could be where he was before he, of his own initiative and volition, divested himself of his rights. He filed a suit in assumpsit against the defendant company claiming $24,000 on the basis that he had made the assignment to his wife "without the companies' consent in writing having first been obtained."

"First" does not necessarily mean the initial pen stroke in an agreement. The obvious intent of the paragraph under consideration was to prevent an assignment *without* the consent of the company involved. If that consent was not given in a preceding heartbeat, it at least accompanied simultaneously the transfer of the plaintiff's rights and, as has been noted, the company ratified the assignment on the same day that it approved of the transfer.

However, apart from all this, the prohibition against assignment in the contract falls under Section 176 of the Restatement, Contracts: "A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment or the obligor from discharging his duty under the contract in any way permissible if there were no such prohibition."

In *Nolan v. Doyle,* 338 Pa. 398, 405, this Court said: "As pointed out in the Restatement of Contracts, sec. 176, the rule exists for the benefit of the obligor who seeks to prevent the intrusion of third parties by inserting a provision forbidding assignment of rights under his contract without his consent."

The obligor here is the defendant company which, of course, is not contesting the assignment.

In some vague, nebulous splashing of argumentation that never crystallizes into a steady stream of logic or even specific statement, the plaintiff contends that the decision in this case is to be guided by principles obtaining in spendthrift trusts, but there is nothing in this case remotely associated with a spendthrift trust. The contract said nothing about protecting payments from levy or attachment on behalf of plaintiff's creditors. What is before us is a simple business contract in which the plaintiff, in consideration for the surrendering and cancellation of another contract, was to receive periodic payments of money. The sole prohibition in the contract against assignment applied only to one type of assignment, which was for the benefit of the obligor, the defendant company, which, of course, had the right to waive it, and did actually waive it.

In entering judgment on the pleadings for the defendant company, the Court below said: "In making the assignment the plaintiff disregarded the plain terms of the contract and is not now in position to repudiate his act by objecting to the action of the defendant corporation in treating the assignment as valid. When plaintiff executed the assignment, and defendant recognized the same as valid, and pursuant thereto made the payments called for in the contract to the assignee, the contract as between the plaintiff and the defendant was terminated, and plaintiff cannot now maintain an action thereon."

We agree with this conclusion and the judgment is, therefore, affirmed.