Flannery Appeal.

516

Argued January 15, 1962.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Conrad G. Moffett,* with him *Daniel T. Deane, Jr.,*
for appellant.

*H. Lyle Houpt,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March
13, 1962:

Two questions are herein presented: (1) where a
school teacher is charged with "immorality" and "in-
competency" arising out of an alleged misappropriation
of school-administered funds and, at the time of the

hearing on such charges some four months later, it appears that he suffers from a mental illness, does the Public School Code *require* that such teacher be dismissed *only* upon the ground of "mental derangement" and not upon the grounds of "immorality" or "incompetency?"; (2) did the dismissed school teacher have a fair and impartial hearing?

Edward M. Flannery (Flannery), a school teacher in Upper Moreland Township School District (School District), Montgomery County, was alleged to have misappropriated funds, administered by the School District, during the 1959-1960 school term. Upon receipt of such information, the Board of School Directors (Board) suspended Flannery as a school teacher and, charging him with "immorality" and "incompetency", instituted proceedings to terminate his contract. Due notice of these charges was given Flannery and a hearing before the Board was originally fixed for April 18, 1960; by agreement, the hearing was continued until August 16th and 23rd, 1960.[1] After hearings, the Board unanimously voted to dismiss Flannery and terminate his contract on the grounds of "immorality" and "incompetency", said dismissal and termination to be effective as of April 4, 1960. Both the State Superintendent of Public Instruction and the Court of Common Pleas of Montgomery County upheld the Board's action and, from the latter's order, Flannery has taken this appeal.

Flannery's dismissal is governed by Section 1122 of the Public School Code of 1949[2] which provides: "The only valid causes for termination of a contract . . . en-

---

[1] The Board instituted proceedings to terminate Flannery's contract on April 5, 1960. On April 3, 1960, Flannery consulted a psychiatrist who entered Flannery on April 5, 1960 in Willow Grove Hospital and later moved him to Abington Memorial Hospital where he remained until June 7, 1960.

[2] Act of March 10, 1949, P. L. 30, as amended, 24 PS §11-1122.

518

tered into with a professional employe shall be *immorality, incompetency,* intemperance, cruelty, persistent negligence, *mental derangement,* advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe . . . ." (Emphasis supplied).

Flannery first argues that where "it is shown that a professional employee is suffering from mental derangement, he must be discharged on that ground, rather than on some other enumerated ground since any other construction of the statute would render the term 'mental derangement' superfluous and without import". In considering this argument, we note that Flannery was not *charged* with "mental derangement" but with "immorality" and "incompetency" and that "mental derangement" was relied upon at the hearings in defense of Flannery's conduct in misappropriating school-administered funds. During the hearings, *at which Flannery did not testify,* two psychiatrists testified, Dr. John E. Turner for Flannery and Dr. Arthur P. Noyes for the Board. Both psychiatrists agreed that Flannery never lost the ability to distinguish right from wrong although in many other respects they disagreed. The court below well summarized their testimony: "Dr. John E. Turner was of the opinion that the appellant's illness was the cause of his irregular conduct. He diagnosed appellant's condition as schizophrenic, as an obsessive compulsive, neurosis, a feature of which is a compulsion to do things against one's will, a tendency to sabotage one's self in order to get rid of a feeling of recognition as a successful person in one's profession, which success the person believes he does not really deserve or think possible. Persons with such a condition have an acute sense of right and wrong. He denied that as a result of appellant's illness, Flannery would have felt a compulsion to appropriate funds, but

he stated that in his opinion Flannery's mental illness was solely responsible for his misappropriation of funds.

"Dr. Arthur P. Noyes testified that no one could be sure if there was a relation between the appellant's mental disorder and his misconduct. His diagnosis corresponded in some respects with that of Dr. Turner. In answer to the question whether the misappropriation of funds was related in any way to mental disorders, he stated: 'I don't think anyone can tell. It is quite possible that some things Doctor Turner brought out (e.g. the need for punishment that he felt inside himself) I wouldn't quarrel with them.' However, he stated that in his opinion appellant is a psychoneurotic of obsessive compulsive type, not a schizophreniac."

In substance, Flannery argues that, from such evidence, it is clear that he suffered from a "mental derangement" and, that being so, the Board, under the Code, supra, was *required* to terminate his contract on that ground alone and not on the other enumerated grounds in the Code, even though there was proof of both "incompetency" and/or "immorality". Such argument is without merit and such a construction would require that we read into the Code that which is not there, either expressly or by implication. An examination of the Code clearly indicates that the legislature gave the Board the authority, assuming the production before it of sufficient and adequate evidence, to terminate the contract of a school teacher upon any one or more of the enumerated grounds; it does not state nor does the Code evidence any legislative intent that, if the evidence shows a mental derangement as well as any one or more of the enumerated grounds, the Board *must* terminate the contract on the ground of mental derangement to the exclusion of the other proven causes. See: *Board of Public Education v. Beilan,* 386 Pa. 82, 94, 125 A. 2d 327, aff'd. 357 U. S. 399.

Implicit throughout Flannery's argument is the thought, that termination of his contract on the ground of "immorality" will indicate to the public minds that he has been dismissed because of sexual misconduct. Nothing could be farther from the truth and there is not a scintilla of evidence upon this record which even insinuates that Flannery was guilty of any sexual misconduct. "Immorality" may and often does include sexual misconduct but is much broader in meaning and scope. In *Horosko v. Mt. Pleasant Township School District*, 335 Pa. 369, 372, 6 A. 2d 866, we approved the following language of the court below: "We hold it to be self evident that, under the intent and meaning of the [School Code], *immorality is not essentially confined to a deviation from sex morality*; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate." (Emphasis supplied). In *Batrus' Appeal*, 148 Pa. Superior Ct. 587, 26 A. 2d 121, wherein it was shown that a school teacher had knowingly made false statements for the procurement of a liquor license with the purpose of misleading the Liquor Control Board, it was held that her dismissal on the ground of "immorality" was proper. Certainly the misappropriation of funds is contrary to ethical conduct and inconsistent with the rules and principles of morality. As Judge (now President Judge) RHODES stated in *Batrus*, supra (pp. 593, 594) : "We think it is self-evident that the conduct, of a teacher, which is subversive of those standards of moral rectitude which the law has established both for government and social conduct, is not conducive to the maintenance of the integrity of the public school system".

Flannery next contends that he was not afforded a fair and an impartial hearing before the Board in that three of the school directors had preconceived ideas

concerning his guilt of the charges.[3] We have carefully read this record and are convinced that Flannery had a fair and impartial hearing and was granted every opportunity to be heard by witnesses, by his own testimony—which he did not give—and by counsel who represented him at the proceeding. In *Spruce Hill Township School District v. Bryner,* 148 Pa. Superior Ct. 549, 25 A. 2d 745, it was contended that the school teacher did not have a fair and impartial hearing because one of the directors had testified that, when the directors voted to bring the charges against the teacher, he was of the opinion that the teacher should be dismissed. The Court, in disposing of this contention, stated (p. 556) : "The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made. That a member of the board had an opinion at the time the charges were preferred against appellant would not disqualify him from participating in a hearing on those charges, or invalidate the proceedings. We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by

---

[3] Flannery presented testimony that at a meeting of the Board on May 2, 1960 one director made a statement that Flannery "would be dismissed" and a second director stated "he would have to be dismissed". Both directors denied any recollection of having made such statements. On April 25, 1960, when the Board was informed that students were taking up a collection for Flannery, a motion was made by the first director and seconded by the second director prohibiting such collection. Allegedly, at that time in answer to a statement that "This is making it tough on the fellow", the second director said "So who wants to make it easy?". A third director accused of prejudging the matter did not attend the hearing by reason of illness and, therefore, took no part in the dismissal.

522

other previous impressions." Under the provisions of the Code the directors must believe that at least a prima facie basis exists for the presentation of charges against the teacher and, under the very scheme of things, must naturally have some opinion. However, absent any evidence that such opinion was a fixed and unchangeable opinion or that, in the deliberations of this board after hearing all the evidence, such opinion dictated the result, we cannot say that Flannery did not have a fair and impartial trial.

Our review of this record convinces us that there was adequate competent evidence to justify the Board in dismissal of Flannery and in termination of his contract on the grounds of "immorality" and "incompetency".

Order affirmed. Costs on appellant.