**Francis KINNIRY, Petitioner,**

v.

**ABINGTON SCHOOL DISTRICT,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1996.

Decided March 19, 1996.

A. Martin Herring, for Petitioner.

Kenneth A. Roos, for Respondent.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

Francis Kinniry (Kinniry) appeals from a decision of the Secretary of Education (Secretary), dated May 31, 1995, upholding Kinniry's dismissal from the Abington School District (District) on the basis of immorality pursuant to section 1122 of the Public School Code of 1949 (School Code), 24 P.S. § 11–1122.[1]

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1122. Section 1122 of the School Code provides in relevant part:

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be *immorali-*

In 1993, Kinniry was indicted by the federal government on one count of conspiracy to traffic in goods bearing counterfeit trademarks, three counts of trafficking in goods bearing counterfeit trademarks, and one count of aiding and abetting.[2] (Secretary's Finding of Fact, No. 9.) Under a guilty agreement, Kinniry pled guilty to trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320,[3] and conspiracy to commit offenses or to defraud the United States in violation of 18 U.S.C. § 371. (Secretary's Findings of Fact, Nos. 10 and 12.)

Based on Kinniry's conviction of these federal offenses, the acting superintendent of the District, James F. McCaffrey (McCaffrey), recommended to the District Board of Directors (Board) that the District terminate Kinniry's professional contract on the grounds of immorality. (Secretary's Finding of Fact, No. 13; R.R. at 143–44.) On September 28, 1993, the District sent a letter to Kinniry setting forth the charges brought against him and setting October 11, 1993 as the date for a hearing concerning his proposed dismissal. (Secretary's Finding of Fact No. 14; R.R. at 173–74.)

At the hearing, the District presented evidence that Kinniry's illegal activities were immoral, compromising his honesty, integrity and truthfulness within the District. (Secretary's Finding of Fact, No. 17.) Specifically, the District entered into evidence Kinniry's indictment and guilty plea. (R.R. at 37, 145–62.) The District also presented the testimony of McCaffrey, who stated that he believed Kinniry's activities compromised Kinniry's ability to teach honesty, integrity and truthfulness and to exemplify those values for the students, (R.R. at 41–42), thus compromising Kinniry's effectiveness as an elementary school teacher, (Secretary's Finding of Fact, No. 19).

In opposition, Kinniry testified on his own behalf and presented the testimony of thirty-one character witnesses. (Secretary's Finding of Fact, No. 20.)

On November 23, 1993, the Board issued an adjudication in which it terminated Kinniry's employment as a professional employee in the District on the basis of immorality. (Secretary's Finding of Fact, No. 21; R.R. at 175–82.) On December 9, 1993, Kinniry filed a timely appeal to the Secretary,[4] (Secretary's Finding of Fact, No. 22), who affirmed the Board's decision on May 31, 1995.

On appeal to this court,[5] Kinniry argues that: (1) the evidence presented by the District before the Board failed to prove that Kinniry's conduct offended the morals of the community or set a bad example for students; (2) the nearly eighteen-month delay from the date of Kinniry's appeal to the Secretary until the date of the Secretary's decision deprived Kinniry of due process;

---

ty, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee....

24 P.S. § 11–1122 (emphasis added).

**2.** Specifically, Kinniry was accused of offering for sale counterfeit designer watches on seven occasions between May 21, 1991 and August 20, 1991. (Secretary's Findings of Fact Nos. 2–8.) The approximate value of the watches was $37,520.00. (Secretary's Finding of Fact, No. 11; R.R. at 151.)

**3.** Under 18 U.S.C. § 2320, the elements of this crime are the use of a counterfeit mark or a spurious designation that is identical with, or substantially indistinguishable from, a registered trademark, on or in connection with such goods or services, which is likely to cause confusion, mistake or deception.

**4.** After *Belasco v. Board of Public Education of School District of Pittsburgh*, 510 Pa. 504, 510 A.2d 337 (1986), it is clear that the Secretary's role in tenure appeals such as this one is much broader than traditional appellate review. In *Belasco*, the Pennsylvania Supreme Court held that when a tenured professional employee is dismissed, the Secretary must perform a *de novo* review of the school board's decision. "Minimum requirements of due process demand that a litigant have, at some stage of a proceeding, a neutral fact-finder." *Id.* at 515, 510 A.2d at 343.

**5.** Our scope of review is limited to a determination of whether the Secretary's findings of fact are supported by substantial evidence, errors of law were committed, or constitutional rights were violated. *Forest Area School District v. Shoup*, 153 Pa.Cmwlth. 423, 621 A.2d 1121 (1993).

and (3) the prosecutorial and adjudicatory functions of the Secretary were commingled and, thus, deprived Kinniry of due process.

## I. Immorality

■ Under section 1122 of the School Code, as noted, one valid cause for termination of a teacher's contract is immorality. Although the term "immorality" is not statutorily defined, the Pennsylvania Supreme Court has determined that the term is to be construed according to its common and approved usage, having regard, of course, to the context in which it is used by the legislature. *Horosko v. Mt. Pleasant Township School District*, 335 Pa. 369, 6 A.2d 866 (1939), *cert. denied*, 308 U.S. 553, 60 S.Ct. 101, 84 L.Ed. 465 (1939). The court noted that "[a]mong the definitions of 'immorality' is 'conduct inconsistent with moral rectitude.'" *Horosko*, 335 Pa. at 373, 6 A.2d at 869 (footnote omitted). For section 1122 purposes, "immorality ... may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate." *Appeal of Flannery*, 406 Pa. 515, 520, 178 A.2d 751, 754 (1962); *Horosko*.

■ The elements of the offense of immorality, which the school district bears the burden of proving, *Foderaro v. School District of Philadelphia*, 109 Pa.Cmwlth. 491, 531 A.2d 570 (1987), are three-fold. First, the school district must prove that the underlying acts which it claims constitute immorality actually occurred. Second, the school district must show that such conduct offends the morals of the community. Finally, the school district must demonstrate that the conduct at issue is a bad example to the youth whose ideals the educator is supposed to foster and elevate. Kinniry contends that he was improperly dismissed because the

District failed to prove the last two of these elements.[6]

■ Although it is the Secretary who determines whether a teacher's conduct offends the moral standards of the community, this determination is a legal one and can only be sustained if legally correct and supported by substantial evidence. *Horton v. Jefferson County–Dubois Area Vocational Technical School*, 157 Pa.Cmwlth. 424, 630 A.2d 481 (1993). Here, Kinniry contends that the District did not present evidence that his conduct offended the morals of the community or was a bad example to the children in the district. On the contrary, Kinniry claims that the District failed to produce any evidence regarding the community moral standard. Kinniry also asserts that the testimony of the thirty-one supporting character witnesses establishes that the morals of the community were not offended, and that he would not be a bad role model for students. The District, on the other hand, while not contesting Kinniry's past effectiveness as a teacher, asserts that the federal offenses to which Kinniry pled guilty are *per se* offensive and, as federal crimes, offend the morals of every community in the nation.[7] We agree with the District.

In reaching our decision, we take particular notice of the nature of Kinniry's illegal actions, which fall into the category of *crimen falsi* crimes. *"Crimen falsi"* is defined as an "offense which involves some element of deceitfulness, untruthfulness, or falsification...." Black's Law Dictionary 335 (5th ed. 1979). It is precisely the inherent dishonesty of *crimen falsi* crimes which sets them apart, not just under the rules of evidence, but also in the eyes and minds of the community. Just as in *Lesley v. Oxford Area School District*, 54 Pa.Cmwlth. 120, 420 A.2d 764 (1980), in which we found the *crimen falsi* crime of shoplifting to fall squarely

---

6. In light of Kinniry's stipulation to admissions of his guilty plea agreement and Kinniry's acknowledgment of his crime on cross-examination, there is no doubt that the District proved that the illegal acts occurred, the first element necessary to show immorality.

7. In support of its position, the District cites prior cases in which Pennsylvania courts have found certain types of criminal activity to be

immoral for section 1122 purposes. *See Lesley v. Oxford Area School District*, 54 Pa.Cmwlth. 120, 420 A.2d 764 (1980) (shoplifting); *Baker v. School District of the City of Allentown*, 29 Pa. Cmwlth. 453, 371 A.2d 1028 (1977) (illegal gambling); and *Batrus' Appeal*, 148 Pa.Superior Ct. 587, 26 A.2d 121 (1942) (submission of false affidavits with liquor license application).

within the definition of immorality, we believe trafficking in counterfeit goods, also a *crimen falsi* crime due to the element of deceit involved, to be *per se* offensive to the morals of the community and a bad example to the youth whose ideals a teacher is supposed to foster and to elevate.[8] Although Kinniry argues that the issue of whether his conduct offends the morals of the community is a legal determination which cannot be made without substantial evidence from which the determination can be drawn, we disagree. Because of the *crimen falsi* nature of the offenses of which Kinniry was convicted, we hold, as a matter of law, that the District satisfied all three elements necessary to justify Kinniry's dismissal for immorality under section 1122.

■ Moreover, after careful review of the record, we note that the testimony of Kinniry's character witnesses was not reflective of the community moral standard, as required, but rather, was based upon personal relationships with, and perceptions of, Kinniry. The fact that former students and current friends and co-workers still believed in Kinniry's abilities as a teacher is irrelevant to the issue of whether Kinniry's criminal actions had offended the morals of *the community;* character witnesses must testify to the person's reputation in the community, not to their own personal opinions. *Commonwealth v. Presbury,* 329 Pa.Superior Ct. 179, 478 A.2d 21 (1984).

## II. Delay of the Secretary's Decision

■ Kinniry next argues that the sixteen-month, twenty-day period between the hearing before the Secretary of Education and the date the Secretary's decision was issued was an inordinate and unconscionable delay which violated his constitutional right to due process. The District maintains, however, that much of the delay was due to Kinniry's failure to timely file a brief which conformed to the rules. Further, the District asserts that Kinniry failed to establish the requisite prejudice or harm resulting from the delay.

*Roche v. Commonwealth, State Board of Funeral Directors,* 63 Pa.Cmwlth. 128, 437 A.2d 797 (1981).

We have previously held that a petitioner seeking to establish that his or her due process rights have been violated bears the burden of proving that some harm or prejudice to his or her interests was caused by the delay. *Ullo v. Commonwealth of Pennsylvania, State Board of Nurse Examiners,* 41 Pa.Cmwlth. 204, 398 A.2d 764 (1979). Here, Kinniry alleges only that the passage of time between hearing and final adjudication was too long; he has not alleged that he was harmed or prejudiced in any way as a result of the delay. Although we do not condone unnecessary delay in adjudicating the fate of a person's livelihood, without evidence that Kinniry suffered any prejudice or harm as a result of the delay, we cannot conclude that Kinniry's due process rights were violated. *Ullo.*

## III. Commingling of Prosecutory and Adjudicatory Functions

■ Finally, Kinniry alleges that there was impermissible commingling of prosecutory and adjudicatory functions in this case. Kinniry argues that the Department of Education's Professional Standards and Practices Commission was considering a motion for Kinniry's decertification at the same time the Secretary was considering his dismissal appeal, thus tainting this litigation and the decertification process. (Kinniry's brief at 19–20.) The District counters that Kinniry has failed to prove that there was any actual commingling of functions among the individual departments within the Department of Education which were involved with Kinniry.

Administrative agencies such as the Department of Education frequently are responsible for performing many simultaneous functions, including playing out prosecutorial and adjudicative roles; when multiple functions are reposed in a single administrative entity, "walls of division [must] be constructed which eliminate the threat or appearance

---

8. Although Kinniry's counsel argued to the contrary at oral argument, we find no legal distinction between *trafficking* in counterfeit goods, *see* 18 U.S.C. § 2320, and counterfeiting; both are *crimen falsi* crimes involving an element of "deceitfulness, untruthfulness, or falsification". Black's Law Dictionary 335 (5th ed. 1979).

of bias." *Lyness v. Commonwealth of Pennsylvania, State Board of Medicine,* 529 Pa. 535, 546, 605 A.2d 1204, 1209 (1992). In the absence of any *actual* commingling, which would give rise to the appearance of bias or prejudice, due process has not been violated. *Stone & Edwards Insurance Agency, Inc. v. Commonwealth, Department of Insurance,* 538 Pa. 276, 648 A.2d 304 (1994).

Here, Kinniry has not shown that there has been any actual commingling in this case between the prosecutorial branch of the Department of Education, which is pursuing the decertification action against Kinniry, and the adjudicative branch of the Department of Education, which heard Kinniry's appeal from the Board's determination. Kinniry's certification was not before the Secretary in this action; the only issue the Secretary addressed was whether Employer improperly terminated Kinniry under section 1122 of the School Code for immorality. Thus, we find no evidence of actual commingling in the record before us.

Accordingly, we affirm the decision of the Secretary of Education.

### *ORDER*

AND NOW, this 19th day of March, 1996, we affirm the May 31, 1995 decision of the Secretary of Education.