**In re Antonini**

C.P. of Beaver County, no. 10655 of 2005.

*James J. Ross,* for plaintiff.
*Douglas R. Nolan,* for defendant.

KUNSELMAN, *P.J.,* June 24, 2005—The matter before the court is an appeal by Enrico Anthony Antonini from the action of the Board of School Directors of Western Beaver School District in terminating Antonini as Superintendent of Schools of Western Beaver Area School District. Therein, Antonini alleges that he is entitled to have the action of Western Beaver set aside for several reasons, or, in the alternative, that he is entitled to a de novo review because of the bias and partiality of several of the school directors. He claims that the action of Western Beaver must be set aside because: (1) the statement of charges were defective in several respects; (2) Antonini was only given a predetermination notice of three of the four charges by Western Beaver; and (3) the

factual basis of the charges has already been decided against Western Beaver and so the present charges are foreclosed by the principal of collateral estoppel or res judicata.

## DEFECTIVE STATEMENT OF CHARGES

Antonini claims that the statement of charges were defective because they were not approved by vote of the school board and because the signature of the board's secretary on the statement of charges was secured by fraud. It is clear from the testimony and evidence in the record that the school board never formally authorized the charges by vote taken at a regular or special meeting of the board. It is also clear from the testimony and evidence in the record that the signature of the board secretary on the statement of charges was secured by deceit on the part of the school board's solicitor. He made her believe she was signing something else and, when she tried to turn the paper to examine the first several sheets, he prevented her from doing so. The question is whether the failure of the board to approve the charges or the obtaining of the secretary's signature to the statement of charges by deceit is fatal to the proceeding before Western Beaver. We conclude that they are not.

There is no specific statutory or case authority which dictates the procedure which must be followed to terminate a superintendent of schools. The section of the School Code which governs the removal of a superintendent provides as follows:

"District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the

district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors." 24 P.S. §10—1080.

In contrast, the section of the School Code which governs the dismissal of tenured professional employees sets forth specific procedural requirements. That section requires a school board to furnish such an employee with a detailed written statement of charges and to conduct a hearing. Written notice of the hearing and the detailed statement of charges must be signed by the president and attested by the secretary of the school board and must be mailed by registered mail. The hearing cannot be sooner than 10 days nor later than 15 days from the written notice and the school board must have the hearing recorded by a public stenographer. These requirements are set forth in 24 P.S. §11—1127.

Antonini argues that, since no procedure is set forth in section 10—1080, the procedure set forth in section 11—1127 must be followed. In fact, he contends, Western Beaver did attempt to follow this procedure but failed since the board did not vote to approve the charges and since the secretary of the board did not knowingly attest to the written statement of charges. We reject this argument. Section 11—1127 specifically applies to tenured professional employees and not to superintendents. Where specific language is included in one section of a statute but not in another, the language should not be implied where excluded. *Fonner v. Shandon Inc.,* 555 Pa. 370, 378, 724 A.2d 903, 907 (1999). The omission of specific language from a similar provision is significant

to show a different legislative intent. *Id.* at 379, 724 A.2d at 907. We conclude that section 11—1127 does not apply to the removal of a superintendent and that there is no requirement for a formal written statement of charges that must be signed by the president of the school board and attested by the secretary.

We agree with Antonini that a school board can only exercise its authority and power by acting as a body at a meeting duly called and at which particular action can be taken under the law. *Edsall v. Jersey Shore Borough,* 220 Pa. 591, 597, 70 A. 429, 431 (1908). However, Western Beaver's failure to approve the charges at a public meeting by vote of its members is not fatal to its power to remove Antonini. Actions which are within the scope of the corporate powers of a school board, but not authorized by proper action, may be ratified by the board. *Kline v. Hampton Twp.,* 42 D.&C.2d 49, 56 (Allegheny Cty. 1967). We conclude that the action of Western Beaver in removing Antonini amounts to a ratification, and so the failure to approve the charges by proper action is not fatal.

## PREDETERMINATION NOTICE

The Supreme Court of the United States has held that "[a]n essential principle of due process is that deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing' . . . ." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The court went on to hold that some form of a predetermination hearing was required in order to provide the employee with an opportunity to respond prior to termination. *Id.*

In the case at bar, Attorney Smart, who investigated the complaints for Western Beaver, sent Antonini a letter outlining three charges he had investigated: (1) improper use of school funds to pay tuition of two teachers enrolled in a Principal Certification Program; (2) failure to complete construction of a handicapped restroom prior to the commencement of the 2004-2005 school year; and (3) authorization of the construction of the restroom without securing quotes for the work in violation of the Pennsylvania Public School Code. Attorney Smart then conducted a predetermination hearing on these three charges at which Antonini had an opportunity to respond. However, the charges upon which Western Beaver acted to remove Antonini included a fourth charge—the tuition payments referred to above were contrary to the terms of the collective bargaining agreement between Western Beaver and the Western Beaver Education Association. Because Antonini was not provided a predetermination notice of this charge, it must be dismissed as a violation of *Cleveland Board of Education v. Loudermill, supra.*

## COLLATERAL ESTOPPEL OR RES JUDICATA

Prior to Antonini's removal, Western Beaver suspended him with pay pending an investigation. The charges were identical to those which were contained in the formal statement of charges. Antonini filed a mandamus action to compel his reinstatement. The issue in the mandamus action was whether or not the conduct complained of was "serious misconduct" that would justify a suspension without the due process hearing required by section 10—1020 of the School Code. We held that the evidence

did not establish "serious misconduct" and ordered Antonini reinstated.

Antonini now contends that our finding in the mandamus action precludes Western Beaver from proceeding further. We disagree. As we said, the issue in the mandamus action was whether Antonini's conduct amounted to "serious misconduct." However, the issue in the present proceeding is whether Antonini's conduct constitutes "neglect of duty, incompetency, intemperance, or immorality." Thus, while the conduct may be the same, the issues are different. In addition, the mandamus action established that Antonini could not be suspended without a due process hearing. These proceedings were intended to provide that hearing. Therefore, Western Beaver was not precluded from proceeding further.

## DE NOVO REVIEW

Antonini contends that he is entitled to a de novo review because the bias and prejudice of a majority of the school board, as well as the conduct and comments of its solicitor, prevented him from having a due process hearing. He acknowledges that, under the Local Agency Law, the court is to hear an appeal on the record of the proceedings before Western Beaver unless the adjudication was in violation of his constitutional rights, an error of law was committed, the procedure was contrary to statute or a finding of fact made by Western Beaver and necessary to support the adjudication is not supported by substantial evidence. 2 Pa.C.S. §754(b). However, he relies on *Belle Vernon Area School District v. Gilmer,* 51 Pa. Commw. 603, 415 A.2d 121 (1980), for an exception to that rule. In that case, the Commonwealth Court held that, when bias, or the appearance of bias, on the part of

the local agency is established, it can warrant the withdrawal of the matter from the local agency and a de novo review of the matter.

Thus, Antonini contends that he has established the bias and prejudice of Western Beaver, and so we are not required to affirm Western Beaver's adjudication but should, instead, conduct a de novo review. Antonini preserved this contention by presenting evidence of bias and prejudice, and requesting the members of Western Beaver to recuse themselves. We shall make findings on this issue based upon the record of testimony and evidence presented on February 16 and 17, 2005.

Stephen Girting is a member of Western Beaver who voted to remove Antonini. Mr. Girting was the football coach at Riverside High School. During his tenure as coach, Antonini was a member of the WPIAL Board of Control which had ruled one of Riverside's football players ineligible. As a result, Riverside was required to forfeit all games in which the player participated. Because of that, Mr. Girting approached Antonini and said that Antonini and the other members of the Board of Control were "pompous assholes." Antonini then called the superintendent of Riverside School District and reported that incident. After, Mr. Girting became a member of Western Beaver, and at a meeting, the purpose of which was to discuss the handicapped restroom, Mr. Girting told Antonini that he had no business calling the Riverside superintendent and telling him about the incident. Further, Mr. Girting, at the conclusion of Antonini's testimony, made statements and cross-examined Antonini to dispute Antonini's testimony as to the identity of the superintendent of Riverside School District and as to the location of the confrontation he had with Antonini. Fi-

nally, Mr. Girting openly campaigned to be elected to the school board for the purpose of removing Antonini.

Ronald Young is a member of Western Beaver who voted to remove Antonini. Mr. Young was a former principal at the school district who worked under Antonini and who later retired. During the years that they worked together, he and Antonini had differences. Mr. Young's proposed retirement package was rejected by Western Beaver and he blamed Antonini for that. He also complained to Antonini at an executive session that Antonini had spoken to his supervisor. Mr. Young also openly campaigned to be elected to the school board for the purpose of removing Antonini. Finally, at the conclusion of Antonini's testimony, Mr. Young made a statement and cross-examined Antonini to dispute Antonini's testimony as to Young's employment.

Julie Modany is a member of Western Beaver who voted to remove Antonini. Ms. Modany blamed Antonini for problems she perceived with an enrichment program and the gifted program. She was also the daughter-in-law of the owner of a construction company with which Western Beaver had contracted to build an auxiliary gymnasium. A disagreement had developed between the contractor and the architect concerning the cement and Antonini supported the architect's position. Ms. Modany confronted Antonini about the role he played in resolving that dispute.

Hubert J. Kovalesky Jr. is a member of Western Beaver who voted to remove Antonini. Mr. Kovalesky participated at the board meeting during which Antonini was reinstated pursuant to our order in the mandamus action. Mr. Kovalesky voted not to reinstate Antonini despite the court order to do so. He did so because he did not

want Antonini reinstated unless the investigation proved Antonini to be right.

Finally, a letter was distributed to each member of Western Beaver on February 16, 2005, immediately prior to the commencement of the hearing before the board on Antonini's proposed removal. The letter was dated February 15, 2005, and was sent to Western Beaver's solicitor, Myron Sainovich, Esquire, by facsimile on February 16, 2005, at 1:54 p.m. The letter was from Charles W. Jelley, Esquire, and set forth complaints of Antonini's conduct toward Dr. Maureen Pritchard, the principal at the time. The letter accused Antonini of harassment and retaliation against Dr. Pritchard and referred to "highly sensitive" information.

This letter (Antonini's exhibit P) was delivered by the solicitor to the president of the school board, Julie Modany, and distributed by Modany to each member of the board. Most members of the board read the letter prior to the commencement of the hearing. Each of the foregoing board members testified that they had not yet reached an opinion as to whether or not the charges against Antonini should be sustained and that their judgment would be based solely upon the evidence presented at the hearing.

Western Beaver relies on *Flannery Appeal,* 406 Pa. 515, 178 A.2d 751 (1962), for the proposition that Antonini must establish that the board members had opinions which were fixed and unchangeable in order to prove bias. In that case, Flannery, a teacher, was alleged to have misappropriated school funds and was charged with "immorality and incompentency" under the then Public School Code. He contended that he was not afforded a fair hearing because three of the school directors had pre-

conceived ideas of his guilt. The court acknowledged that board members must have some knowledge of the facts in order to make the charges. The court then said:

"That a member of the board had an opinion at the time the charges were preferred . . . would not disqualify him from participating in a hearing on those charges, or invalidate the proceedings. We do not think anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions." *Flannery Appeal, supra,* 406 Pa. at 521-22, 178 A.2d at 754, quoting *Spruce Hill Township School District v. Bryner,* 148 Pa. Super. 549, 25 A.2d 745 (1942). The court went on to say that "absent any evidence that such opinion was a fixed and unchangeable opinion or that, in the deliberations of this board after hearing all the evidence, such opinion dictated the result, we cannot say that Flannery did not have a fair and impartial trial." 406 Pa. at 522, 178 A.2d at 754.

It is true that board members Girting, Young, Modany and Kovalesky testified that they had not reached an opinion of Antonini's guilt and that their judgment would be based solely upon the evidence presented. However, we find that testimony to be incredible. Three of the members, Girting, Young and Modany, had personal grudges with Antonini. Girting and Young's stated purpose in seeking election to the board was to get rid of Antonini. The fourth, Mr. Kovalesky, was unwilling to reinstate Antonini until Antonini proved his innocence of the charges. All of the foregoing shows such bias and prejudice on the part of these board members so as to establish that they were influenced by their prior opinions.

This is confirmed by their questions and statements to attack Antonini's credibility on collateral matters during the hearing.

In addition to actual bias, the record establishes a strong appearance of bias against Antonini when the letter of uncharged conduct was circulated among the board members immediately before the hearing. The timing of this letter and the manner of its appearance before the board is extremely suspect. First, it was communicated to the solicitor by fax in the early afternoon of the day of the hearing. There is nothing in the body of the letter to suggest the need to expedite its delivery to Western Beaver's solicitor.

When the distribution of the letter is reviewed in the context of the solicitor's prior actions, which included an attempt to pressure Antonini to resign and the securing of the signature of Paula Kadilak to the formal statement of charges by deceit, it is obvious that the purpose of the letter was to prejudice Antonini before the board.

Under all the circumstances of this case, we are convinced that Antonini has proven actual bias and the appearance of bias that requires the adjudication of Western Beaver to be set aside. As requested, we will retain jurisdiction for the purpose of conducting a de novo review and will schedule a conference with counsel for the parties to enable them to assist the court in determining the manner of review and in drafting a scheduling order. An appropriate order is attached.

## ORDER

The adjudication of Western Beaver School District in terminating the employment of Enrico Anthony

500

Antonini as Superintendent of Schools of the Western Beaver Area School District is set aside. The court retains jurisdiction of the matter for the purpose of conducting a de novo review.

Counsel for the parties shall appear in chambers of courtroom no. 7 on July 15, 2005, at 10 a.m. for a conference with the court.