Samuel R. Clark, Petitioner *v.* Colonial School District, Respondent.

Argued June 5, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

420

*Richard W. Rogers,* with him *Rogers, King & Cole,* for petitioner.

*Raymond M. Seidel,* with him *High, Swartz, Roberts & Seidel,* for respondent.

OPINION BY JUDGE ROGERS, July 6, 1978:

Samuel R. Clark has appealed from an order of the Secretary of Education upholding the action of Clark's employer, Colonial School District (School District), dismissing him from employment.

Clark was a regular professional employee engaged by the School District as an English teacher in one of its junior high schools. On June 14, 1974 Clark was notified that the performance of his duties during the 1973-1974 school year had been rated unsatisfactory, that there were indications that his health was affecting his work and that unless he agreed to an evaluation by a physician certified in psychiatry he would be suspended from his duties as a teacher. Clark sought and obtained a preliminary injunction from the Court of Common Pleas of Montgomery County restraining the School District from compelling him to submit to a psychiatric evaluation. In the litigation he later agreed to be examined by a disinterested, impartial physician. The injunction was lifted. Pursuant to the

agreement of the parties Clark was to recommend two disinterested impartial psychiatrists to the School District which would select one to conduct the evaluation. Clark selected only one psychiatrist, a Dr. Claney, and the School District accepted him. On or about August 21, 1974, Clark was suspended with pay pending Dr. Claney's report.

Dr. Claney conducted two interviews with Clark and also reviewed several School District memoranda of interviews with Clark. By a letter dated October 19, 1974 addressed to Clark's counsel, with copy to School District's superintendent, Dr. Claney reported that:

I think it is fairly certain that Mr. Clark has a paranoid problem that decompensated at the end of the school year, in June of 1974, into states of delusion. . . . I do not see Mr. Clark as ever taking the pressures of the classroom setting again. Whether or not he would become too paranoid around people in a minor administrative position is one of conjecture but is most probable.

As a result of Dr. Claney's report, Clark was notified in a letter dated November 5, 1974, over the signature of the vice-president of the school board, attested by the secretary, that a hearing would be held on November 18, 1974, to determine whether Clark should be dismissed on the charge of "mental derangement which manifests itself in such manner as to render you incompetent to properly discharge your duties and responsibilities as a teacher." Hearings were held by the school board. Clark did not testify and presented no witnesses in his own behalf at these hearings. It is not necessary to repeat the testimony of Clark's colleagues concerning his performance as a teacher during the school year just before the hearings. It suffices to say that this testimony was consistent with

Dr. Claney's opinion expressed at the hearing that Clark was so deranged that he was incapable of qualifying as a teacher in a school. On February 19, 1975, the school board adopted a resolution declaring that the charge of mental derangement had been substantial and dismissing Clark from his employment.

The Secretary of Education by a comprehensive opinion evidencing a careful review of the record affirmed the school board's order of dismissal and the present appeal followed. We also have examined the record and, as did the Secretary, conclude that the evidence more than adequately supports the charge on which Clark was dismissed. We therefore agree with the Secretary that Clark's contention that the record required a decision in his favor on the merits is without merit.

Clark's able counsel additionally raises a number of objections to the procedures employed by the School District rating and dismissing his client. He first contends that because the school board did not take formal action (presumably memorialized by resolution recorded in its minutes) to authorize the institution of charges against Clark, the Secretary erred in not concluding that the board violated Section 1127 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1127. Section 1127 pertinently provides:

> Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting

> forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges.

We agree with the Secretary that the school board complied with this section of the Code, which contrary to Clark's assertion does not require that the school board must act formally on bringing charges or sending notices of hearing. Clark says his thesis is supported by Sections 508 and 1129 of the School Code, 24 P.S. §§5-508, 11-1129. We believe they support the school board's position. Section 508 requires that a majority vote of the school board must be taken in favor of an action "[d]ismissing a teacher after a hearing." Section 1129 provides that a professional employee may be dismissed only upon a two-thirds vote of the school board in favor of discharge. Both provisions require formal school board action on *dismissal;* neither mentions the initiation of charges. The School Code clearly does not require formal school board action authorizing the initiation of charges and the sending of notice of hearing.

Clark next contends that the ratings of Clark's classroom performance by a person with the job title of administrative assistant to the principal of the school where Clark did his teaching were neither competent nor admissible evidence of Clark's mental condition because an administrative assistant is not one of the positions specified as having the authority to rate the performance of professional employees by Section 1123 of the School Code, 24 P.S. §11-1123. Section 1123 provides: "[r]ating shall be done by or under the supervision of the superintendant of schools, or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who

has supervision over the work of the professional employe. . . ." The record shows that Clark's performance was in fact *rated* by the superintendent of schools. The rating made by the superintendent was based in part on *observations* of an assistant principal and of the administrative assistant to the principal in question. It is noted that the administrative assistant was himself a professional employee possessing a secondary principal's certificate. We discern nothing in the statute prohibiting a person named therein as one authorized to *rate* a teacher, to base his rating on the observations of other qualified observers.

Finally, Clark says that Dr. Claney's testimony should have been disregarded because his conclusion concerning Clark's mental condition was not the result of a truly independent examination. This contention is grounded on the fact that Dr. Claney reviewed several reports of school personnel of interviews with and observations of Clark. We have carefully examined Dr. Claney's testimony and we find no reason to conclude that the opinions there expressed were based on anything other than his personal examination of Clark. Dr. Claney was chosen by Clark. In addition, on both direct and cross-examination, Dr. Claney repeatedly declared that his evaluation of Clark was based solely on his personal examinations. Indeed, Dr. Claney emphasized that if he had relied on the written reports he would have diagnosed Clark's condition of mental illness as being more serious than that described in his report to Clark and the school board and in his testimony.

We affirm the Secretary's order.

### Order

And Now, this 6th day of July, 1978, the order of the Secretary of Education dated December 14, 1976, affirming the decision of the Board of School Directors of the Colonial School District is affirmed.