IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The School District of Philadelphia, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Ellis Jones, | : | No. 2150 C.D. 2013 |
| Respondent | : | |
| | | |
| Ellis Jones, | : | |
| Petitioner | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia, | : | |
| | : | No. 2230 C.D. 2013 |
| Respondent | : | Argued: March 9, 2016 |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COVEY                    FILED: June 2, 2016

The School District of Philadelphia (District) and Ellis Jones (Jones) petition this Court for review of Acting Secretary of Education Carolyn C. Dumaresq's (Acting Secretary) November 5, 2013 order reinstating Jones to his position as a teacher and professional employee from August 10, 2009 to December 15, 2010, and sustaining Jones' employment termination as of December 15, 2010. The District presents six issues for this Court's review: (1) whether the procedures the District used to terminate Jones' employment complied with the Public School

Code of 1949 (School Code);[1] (2) whether the School Code requires the School Reform Commission (SRC) to resolve before the issuance of charges that evidence existed that, if true, justified employment termination; (3) whether the District was required to present evidence that the SRC read or knew about the charges or the transcript of the employment termination hearing; (4) whether the August 10, 2009 letter imposed a suspension without pay upon Jones; (5) whether the SRC would have violated Jones' due process rights if it made a pre-charge determination; and (6) if the Court rules that there were procedural defects, whether the proper remedy is remand.

Jones presents six issues for this Court's review: (1) whether the District failed to comply with the mandatory procedures set forth in the School Code when the District terminated Jones' employment as a teacher on August 10, 2009 without a hearing, and then belatedly held a hearing eight months later which also did not comply with the School Code, and finally resolved to ratify Jones' illegal employment termination another seven months later on December 15, 2010; (2) whether the failure of the District and the SRC to comply with the procedural safeguards of the School Code is a Due Process Clause violation of the United States (U.S.) Constitution; (3) whether the Acting Secretary erred when, on reconsideration, she changed Secretary of Education Ronald J. Tomalis' (Secretary) decision to sustain the illegal termination of Jones' employment as of December 15, 2010, when there was no legal basis for such partial reversal; (4) whether the two year undue delay of the Acting Secretary in issuing her reconsidered Opinion created the appearance of impropriety and fatally compromised Jones' due process rights by inhibiting the impartiality of the tribunal; (5) whether the SRC met its burden of proof to sustain a charge of immorality where the SRC presented no unbiased witness who said that Jones' conduct offended the morals of the community, and whether the SRC

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1-101 – 27-2702.

Chairman improperly refused to allow Jones' witness, Eugene Woehr (Woehr), a department head at Dobbins Area Vocational Technical School (AVTS), to testify that Jones did nothing which rose to the level of immorality within the community, and that the allegations against Jones were, in his words, absurd; and (6) whether the Acting Secretary improperly took words and phrases from Jones' conversations with individual students out of context and purposefully reconstructed them in an inflammatory manner, without proper citation to the record, in order to rationalize the reversal of the Secretary's decision.

## Background

The District hired Jones as a teacher and professional employee on September 1, 2002. Jones was a vocational teacher at AVTS for six years until the electronics program was discontinued at that location. During the 2008-2009 school year, Jones was assigned as a math teacher at Mastbaum AVTS (Mastbaum). On or about April 30, 2009, Mastbaum's principal Mary Dean (Dean) received a letter containing alleged statements Jones made in his classroom while teaching. The letter was signed by the project manager and three corps members of City Year Greater Philadelphia (City Year) that spent time in Jones' classroom working with him to help his students. City Year members include assistant teachers, tutors and mentors.

In the City Year letter, the corps members related specific instances of Jones speaking unprofessionally to his students, including using foul language and inappropriate discussion topics such as sex. *See* Reproduced Record (R.R.) at 628a-630a. Upon receiving the City Year letter, Dean asked a school police officer to conduct an investigation by randomly selecting pupils from a list of Jones' students and asking them to write a statement about Jones. Seven students prepared written statements, five of which confirmed the allegations set forth in the City Year letter regarding Jones' speaking improperly to his students.

3

After Dean received the statements from Jones' students, she conducted an investigatory conference on June 1, 2009, which included Jones, Philadelphia Federation of Teachers (PFT) representative Evette Jones (PFT Jones), and the District's labor relations assistant Ted Bywalski (Bywalski). Jones admitted to making some of the statements, but asserted that they were taken out of context in some cases and were misinterpreted in others. He also maintained that he was trying to create an atmosphere of trust and rapport with his students.

After the June 1, 2009 investigatory conference, Dean prepared an unsatisfactory incident report (SEH-204) and recommended that Jones' employment with the District be terminated. Jones sent a letter dated June 15, 2009 to Dean responding to the SEH-204, wherein, he apologized for his remarks and repeated that he was trying to build trust and rapport with the students, and that some remarks were taken out of context and misinterpreted while others were inaccurate and a misrepresentation of what happened in the classroom. Jones further stated that since he received the concerns from Dean and the City Year members, he immediately changed his approach and apologized multiple times.

On June 24, 2009, Assistant Regional Superintendent James Douglass (Douglass) held a second-level conference regarding the SEH-204. In attendance were PFT Jones and Bywalski. PFT Jones spoke on Jones' behalf and stated that Jones apologized, that the tactic he used to gain respect of the students was not appropriate, that his comments were taken out of context and that he was dedicated to his students. After the June 24, 2009 meeting, Douglass recommended that Jones be discharged from his employment with the District.

By August 10, 2009 letter, signed by the District Superintendent and the SRC Chairman, Jones was notified that the charges against him constituted "a willful violation of or failure to comply with the School Laws of this Commonwealth, and other improper conduct such as to constitute cause pursuant to . . . Section [1122] of

4

the [School Code, 24 P.S. § 11-1122.]" R.R. at 727a. The letter informed Jones that they would recommend to the SRC that his employment with the District be terminated, and that he had a right to request an SRC hearing. In the same letter, Jones was told that the District's payroll department would be advised to make the necessary salary adjustments. Jones requested a hearing which was held on April 16, 2010 before the SRC Chairman.[2]

Thereafter, on December 15, 2010, the SRC resolved to dismiss Jones, effective August 14, 2009. Jones appealed from the SRC's decision to the Secretary. On September 13, 2011, the Secretary reversed the SRC's decision, reinstated Jones and ordered payment of any compensation that he lost due to his dismissal. On September 28, 2011, the District filed a petition for reconsideration (Reconsideration Petition) of the Secretary's order pursuant to Section 35.241(a) of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.241(a). On October 11, 2011, the District appealed from the Secretary's order to this Court. On October 27, 2011, the Secretary granted the District's Reconsideration Petition and issued a briefing schedule.

On December 6, 2011, this Court denied the District's request to stay this matter pending the Secretary's reconsideration decision because the Reconsideration Petition was a nullity. However, this Court construed the application for stay to include a request to remand the matter to the Secretary, and remanded the case to the Secretary with directions to consider the District's Reconsideration Petition within thirty days. On December 20, 2011, the Secretary granted the District's Reconsideration Petition. On November 5, 2013, the Acting Secretary reinstated Jones' employment from August 10, 2009 to December 15, 2010, and

---

[2] No other SRC members participated in the hearing.

terminated Jones' employment as of December 15, 2010. The District and Jones appealed to this Court.[3]

## Jones' Non-School Code Arguments[4]

### Two Year Delay

Jones argues that the two year undue delay of the Acting Secretary in issuing her reconsidered decision created the appearance of impropriety and fatally compromised Jones' due process rights by inhibiting the impartiality of the tribunal. Jones cites *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), to support his position. The District rejoins that the delay did not constitute a due process violation because Jones did not allege harm or prejudice caused by the delay, and cites *Kinniry v. Abington School District*, 673 A.2d 429 (Pa. Cmwlth. 1996).

In *Lyness*, the Pennsylvania Supreme Court held: "Whether or not any actual bias existed as a result of the [b]oard acting as both prosecutor and judge is inconsequential; the potential for bias and the **appearance of non-objectivity** is sufficient to create a fatal defect under the Pennsylvania Constitution." *Id.* at 1210 (emphasis added). The appearance of impropriety in *Lyness* was specific to the non-objectivity of the board. Here, although there may have been a delay in the decision, the Acting Secretary was not involved in the SRC hearing or resolution. *See id.* Thus, because she did not act as prosecutor and judge, there is not even an appearance of non-objectivity. Accordingly, *Lyness* is inapposite.

---

[3] "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007).

[4] We will address Jones' arguments first as his issues overlap the District's issues. The opinion separates Jones' non-School Code and School Code arguments for clarification purposes.

Moreover, the *Kinniry* Court held:

> We have previously held that **a petitioner seeking to establish that his or her due process rights have been violated bears the burden of proving that some harm or prejudice to his or her interests was caused by the delay.** Here, [the petitioner] alleges only that the passage of time between hearing and final adjudication was too long; he has not alleged that he was harmed or prejudiced in any way as a result of the delay. Although we do not condone unnecessary delay in adjudicating the fate of a person's livelihood, without evidence that [the petitioner] suffered any prejudice or harm as a result of the delay, we cannot conclude that [the petitioner's] due process rights were violated.

*Id.* at 433 (citation omitted; emphasis added). *Kinniry* controls the instant case. Because Jones has not offered any evidence that he suffered some prejudice or harm to his interests from the delay, we cannot conclude that Jones' due process rights were violated by said delay.

## Immorality

Jones next contends that the SRC failed to meet its burden of proof to sustain a charge of immorality because the SRC presented no unbiased witness who said that Jones' conduct offended the morals of the community, and the SRC Chairman refused to allow Jones' witness, Woehr, to testify that Jones did nothing which rises to the level of immorality within the community.

This Court has explained:

> Immorality is not defined in the . . . School Code. Our appellate courts have defined 'immorality' as conduct that 'offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate.' *Horosko v. Sch*[.] *Dist*[.] *of Mt. Pleasant* [*Twp.*], . . . 6 A.2d 866, 868 ([Pa.] 1939). To establish immorality, the school district must prove three elements:

7

(1) that the alleged immoral act actually occurred; (2) that the act offends the morals of the community; and (3) that the act sets a bad example for students. The moral standards of the community will not be presumed; they must be proved by substantial evidence. Immoral conduct is something more serious than unprofessional conduct.

*McFerren v. Farrell Area Sch. Dist.*, 993 A.2d 344, 353-54 (Pa. Cmwlth. 2010) (citations omitted). Further,

[w]e have previously held that a school board's finding that a professional employe[e] was guilty of offending the moral standards of the community by his actions would not be disturbed on appeal if supported by substantial evidence. . . . We have held, of course, that an administrative decision is supported by substantial evidence when a reasonable man, acting reasonably, would have reached the same decision. . . .

*Central York Sch. Dist. v. Ehrhart*, 387 A.2d 1006, 1008 (Pa. Cmwlth. 1978).

Here, it is undisputed that the acts occurred. In addition, our careful review of the record convinces us that "a reasonable man, acting reasonably" could have reached the decision made by the Acting Secretary, whose findings represent a fair and supportable amalgam of the whole. *Id.* Several students and City Year corps members testified at the SRC hearing to the numerous incidents of unacceptable interaction between Jones and his students. Moreover, City Year corps members, who were not students and/or agents of the school, are a fair representative of the community and they were so offended by Jones' behavior that they wrote the letter that initiated the investigation into Jones' conduct. Finally, this Court cannot fathom how a teacher repeating and joining in his students' **bad** behavior can set a **good** example for the students. Accordingly, the Acting Secretary properly determined that the SRC met its burden of proving that Jones' conduct offended the moral standards of the community.

With respect to Woehr's testimony, because Jones has not developed this argument by providing case law or record evidence, we are precluded from addressing this issue. *See In re Condemnation of Land for S.E. Cent. Bus. Dist. Redevelopment Area No.1,* 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008) ("Arguments not properly developed in a brief will be deemed waived."). Notwithstanding, Woehr's testimony cited in Jones' brief is irrelevant to the immorality standard, i.e., in answer to the question "[f]rom your experience working with [] Jones and observing him, do you think he is a clear and present danger to the school children of Philadelphia?" Woehr responded: "The idea is [a]bsurd! He is just totally not. He always has had the best interests of students at heart, always[.]" Jones Br. at 31 (quoting Notes of Testimony April 16, 2010 at 177-178; R.R. at 535a-536a.) The issue is not whether Jones' conduct is a clear and present danger to his students, but rather, whether his conduct offends the morals of the community and is a bad example to his students. Because substantial evidence supports the Acting Secretary's finding that Jones' conduct constitutes immorality, we cannot disturb that finding.[5]

### Out of Context

Jones also maintains that the Acting Secretary improperly took words and phrases from Jones' conversations with individual students out of context and purposefully reconstructed them in an inflammatory manner, without proper citation to the record, in order to rationalize the reversal of the Secretary's decision.

___

[5] In his brief, Jones attaches a progressive discipline issue to this argument, i.e., Jones' due process rights were violated because he was not given progressive discipline. Because Jones did not develop this argument by providing case law or record evidence, we are precluded from addressing this issue. *See In re Condemnation of Land for S.E. Cent. Bus. Dist. Redevelopment Area No.1.* Notwithstanding, we discern no merit in this additional argument.

9

Specifically, Jones contends that his discussions and joking with students were taken out of context and improperly reconstructed to demonize him.

First, virtually all of Jones' statements contained in the Acting Secretary's findings of fact contain accurate record citations, those that do not, reference from where they were taken, i.e., the SRC hearing testimony of specific students. More importantly, in his brief, Jones does not deny that he made the statements, but rather explains them and admits to their inappropriateness. Specifically, Jones' counsel rationalizes:

> [] Jones made the mistake that many teachers do — he became too familiar with the students at times. They felt a bit too free to joke with [] Jones about such things as Viagra. That is normal in high schools because students see Viagra commercials on television and they sometimes joke with teachers. [] Jones, who is a jovial and friendly personality [sic], was willing to respond in a humorous way. **That may be inappropriate** but it is not immorality.

Jones Br. at 31 (emphasis added). Jones' statements were not mischaracterized and supported the Acting Secretary's decision.

### Jones' School Code Arguments

### Property Interest

Before we address Jones' alleged School Code violations, this Court acknowledges the well-established law that as a tenured professional employee, **Jones has a property interest in continued employment**. *Andresky v. W. Allegheny Sch. Dist.*, 437 A.2d 1075 (Pa. Cmwlth. 1981). The U.S. Supreme Court has explained:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions

10

are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Accordingly, Jones has a legitimate claim to continued employment secured by state statute. Specifically, Section 1122 of the School Code provides that the contract of a professional employee may only be terminated for "immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement . . . (or) persistent and wilful violation of . . . school laws . . . ." 24 P.S. § 11-1122. The U.S. Supreme Court expounded in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985):

> If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty. **The right to due process 'is conferred**, not by legislative grace, but **by constitutional guarantee**. **While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards**.' *Arnett v. Kennedy*, . . . 416 U.S. [134,] 167 . . . [(1974)] (POWELL, J., concurring in part and concurring in result in part); *see id*., at 185 . . . (WHITE, J., concurring in part and dissenting in part).

*Loudermill*, 470 U.S. at 541 (emphasis added). Thus, although we hold that the District has met its burden of proving immorality, and immorality is a dischargeable offense, that ruling does not and cannot negate the District's obligation to provide Jones the due process protection to which he is entitled. Because "**no dismissal of a**

11

**tenured professional employee can be valid unless the dismissing school district acts in full compliance with the Code**[,]" it is our duty to review whether the District has in fact done so in the instant case. *West Shore Sch. Dist. v. Bowman*, 409 A.2d 474, 480 (Pa. Cmwlth. 1979) (emphasis added).

### School Code

Jones argues that the District failed to comply with the School Code's mandatory procedures when **the District terminated his employment as a teacher on August 10, 2009** without a hearing, and then belatedly **held a hearing eight months later** which also did not comply with the School Code, and finally **resolved to ratify Jones' illegal employment termination another seven months later** on December 15, 2010.

The District sent Jones a letter dated August 10, 2009 which stated, in relevant part:

> Dear Mr. Jones:
>
> This is to advise you that we shall recommend to the [SRC] that your employment with [t]he [District] be terminated effective immediately. The [District's] Payroll Department shall be advised to make the necessary salary adjustments. The charges against you constitute just cause pursuant to the collective bargaining agreement and, in addition, constitute a willful violation of or failure to comply with the School Laws of this Commonwealth, and other improper conduct such as to constitute cause pursuant to . . . Section []1122 of the [School Code, 24 P.S. § 11-1122].
>
> . . . .
>
> You are entitled to request a hearing before the [SRC]. If it is your intention to appeal this recommendation, you <u>must</u> contact Francis X. Bielli, Assistant General Counsel, 440 N. Broad Street, Third Floor, Philadelphia, PA 19130 in writing, within five (5) days of receipt of this letter. Your letter should include a telephone number where you can be

12

reached. Your hearing, if you request one, will be on August 21 @ 2[:]00[]p[.]m[.] at 440 N. Broad Street, First Floor, Philadelphia, PA 19130.

Failure to request a hearing in writing within the time stated will be deemed a waiver of any and all rights you may have to an appeal.

In the alternative, you may utilize the grievance procedure by requesting your union to follow the collective bargaining agreement grievance procedure applicable to you.

You may elect one or the other of these two appeal procedures, but not both.

R.R. at 727a-728a. Thereafter, Jones requested an SRC hearing which occurred on April 16, 2010. Jones' subsequent discharge did not occur until the SRC's December 15, 2010 resolution. Although the resolution stated that Jones' employment termination was effective August 14, 2009, the Acting Secretary's November 5, 2013 order reinstated Jones to his position as a professional employee from August 10, 2009 to December 15, 2010.

Section 1127 of the School Code provides:

**Before any professional employe**[e] **having attained a status of permanent tenure is dismissed** by the board of school directors, such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A **written notice signed by the president and attested by the secretary** of the board of school directors shall be forwarded by registered mail to the professional employe[e] **setting forth the time and place when and where such professional employe**[e] **will be given an opportunity to be heard** either in person or by counsel, or both, before the board of school directors **and setting forth a detailed statement of the charges**. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe[e] and his or

13

> her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

24 P.S. § 11-1127 (emphasis added). This Court has interpreted the above section as "requir[ing] the [school b]oard to **resolve** to demote the employee **and** to furnish him with a written statement of the charges **prior** to the hearing." *Patchel v. Wilkinsburg Sch. Dist.*, 400 A.2d 229, 232 (Pa. Cmwlth. 1979) (emphasis added).

> More importantly, . . . [t]he [school b]oard only need[s] to . . . pass[] a resolution that it ha[s] sufficient evidence to support its belief, to demote . . . [the professional employee] by some given date, and therein direct the Secretary and President of the [school b]oard to serve notice upon [the professional employee] of this fact and to advise him of his right to a hearing.

*Id.* (quoting *Abington Sch. Dist. v. Pittenger*, 305 A.2d 382, 387 (Pa. Cmwlth. 1973)).

In the instant case, other than providing a statement of charges, the District did not comply with the mandates provided in Section 1127 of the School Code. Specifically, the SRC resolution did not occur until December 15, 2010, and the notice was not attested by the SRC Secretary. Pursuant to the SRC resolution, the effective date of Jones' employment termination was August 14, 2009. Clearly, the April 16, 2010 SRC hearing and the December 15, 2010 resolution do not pre-date Jones' employment termination. "In no case can the effective date of the dismissal be earlier than the date of the school board's resolution." *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 84 A.3d 391, 397 (Pa. Cmwlth. 2014). Accordingly, the District failed to comply with the mandatory procedures set forth in the School Code.

14

## Due Process

Jones further asserts that the failure of the District and the SRC to comply with the procedural safeguards of the School Code is a Due Process Clause violation of the U.S. Constitution. The District rejoins that Jones' employment was not terminated until after an SRC hearing "and a public vote to terminate on December 15, 2010."[6] District Br. at 20. In addition, the District contends that the August 10, 2009 letter merely suspended Jones without pay pending his potential discharge. District Br. at 30.

> Pennsylvania courts have construed Section 1127 [of the School Code] to mean that a tenured teacher can only be dismissed by a school district's board, not its administrative staff. Further, **the statutory procedures for dismissal must be strictly followed and . . . no material deviation therefrom is permissible. A deviation from these procedures constitutes a denial of due process.**

*Neshaminy Sch. Dist.*, 84 A.3d at 397 (citations and quotation marks omitted; emphasis added). Here, on August 10, 2009, the District communicated to Jones that it "shall recommend to the [SRC] that your employment with [t]he [District] be terminated effective immediately" and effective immediately the District ceased his pay. R.R. at 727a. Contrary to the District's argument, the letter does not lend itself to informing Jones that his employment with the District has been suspended. If that is what the District intended then it could have so communicated. Rather, the unambiguous words reveal finality and the District's intent to immediately discharge Jones. Moreover, the District's actions immediately after issuance of the letter in stopping Jones' pay with no statement beyond the words that the District recommends his immediate discharge further evidences a termination, not a

---

[6] The SRC hearing was conducted by one member of the SRC on April 16, 2010, and the "public vote" was the SRC resolution that was presented for formal action by the 4 attending members of the SRC on December 15, 2010. District Br. at 20.

suspension. "[A]ssuming arguendo that there was ambiguity, doubtful language is construed most strongly against the drafter thereof." *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986). Thus, the letter cannot be construed as suspending Jones' employment.

The District admits in its brief that "[u]nder Pennsylvania law, school administrators do not have authority to terminate tenured professional employees. In the [District], only the SRC has that authority. Just as plainly, school administration may *suspend* a tenured professional employee without pay pending discharge." District Br. at 30. This acknowledgment is at complete odds with the District's initial argument before the Secretary that the letter was the result of SRC action and not administrative, and appears to be a disingenuous attempt to justify the District's non-compliance with the School Code.

The Acting Secretary subsequently revised the termination date to December 15, 2010, the date of the SRC resolution, and ordered backpay for the time in between. However, a retroactive order does not cure the defect.[7] As explained above, the District did not comply with the School Code. "A deviation from these procedures constitutes a denial of due process." *Neshaminy Sch. Dist.*, 84 A.3d at 397. Accordingly, the District violated Jones' due process rights under the U.S. Constitution.

**Partial Reversal**

Jones next contends that the Acting Secretary erred when the decision of the Secretary, upon her reconsideration, was changed to sustain the illegal

---

[7] Our conclusion that the retroactive order changing the date of Jones' employment termination to the date of the SRC resolution cannot cure the District's failure to adhere to the mandatory statutory provisions is discussed more fully below.

16

termination of Jones' employment as of December 15, 2010, when there was no legal basis for such partial reversal.

> In *In re Swink,* . . . 200 A. 200 ([Pa. Super.] 1938), a school board voted to dismiss a teacher for immorality. Thereafter, it sent her a notice stating that she could attend a hearing to convince the board of the reasons she should be reinstated. The Superior Court held that dismissing the teacher without a prior hearing violated the statutory procedure in effect at that time.[FN]5 These deviations from the statutory procedures constituted 'fatal defects,' making the school board's dismissal an 'illegal' act. *Id.* at 203. Accordingly, the Superior Court reversed the school board's decision.

> > [FN]5. The statute then in effect was Section 1205 of the Public School Code, Act of May 18, 1911, P.L. 309, *as amended* by Section 2 of the Teachers' Tenure Act, Act of April 6, 1937, P.L. 213, *formerly* 24 P.S. § 1126, *repealed by* Section 2701 of the Public School Code of 1949. It provided as follows:

> > (d) Before any professional employe[e] is dismissed ... the secretary of the school district shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her dismissal ... is based, together with a written notice signed by the president and attested by the secretary of the board of school directors of a time and place when and where such professional employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors.

> > \* \* \*

> > (f) After fully hearing the charges or complaints and hearing all witnesses produced by the board and the person against whom the charges are pending, and after full, impartial and unbiased consideration thereof, the board of school directors ... shall by a two-thirds vote of all the members thereof, to be recorded by roll call, determine whether or not such charges or complaints have been sustained and

17

whether the evidence substantiates such charges and complaints, and in accordance with such determination shall discharge ... such professional employe[e] or shall dismiss the complaint.

24 P.S. § 1126(d), (f). Similar provisions are now found in Sections 1127 and 1129 of the [School Code].

In short, a school board that does not strictly follow the statutory procedures for a teacher dismissal violates due process. **Further, a 'fatal defect' in the procedures followed by the school board will render its teacher dismissal an illegal act**. *In re Swink,* 200 A. at 203.

*Neshaminy Sch. Dist.*, 84 A.3d at 397-98 (citation omitted; emphasis added). In the instant case, the Secretary opined in his decision:

There is no evidence in the record that the SRC, other than the Chairman, had seen or reviewed the charges prior to the hearing on April 16, 2010. There is no evidence that, prior to the hearing on April 16, 2010, the SRC had resolved to dismiss [] Jones and had directed the Chairman and the Secretary of the SRC to serve notice on [] Jones of this fact and to provide him the right to a hearing. In addition, the hearing was held before the Chairman of the SRC and not the entire SRC; thus, not only is there no evidence that the SRC reviewed the charges prior to the hearing and resolved to dismiss [] Jones, there is no evidence that the SRC even knew about the charges or the hearing. The only evidence of the SRC's knowledge of anything regarding [] Jones and his dismissal was when the SRC resolved on December 15, 2010, to dismiss him[] effective August 14, 2009.

In the August 10, 2009 letter, the SRC Chairman and the Superintendent of the District advised [] Jones that they would recommend to the SRC that he be dismissed from his employment with the District immediately. In addition, the letter stated that the payroll department would be advised to make the necessary salary adjustments. **The record evidences that [] Jones was paid for his employment with the District through the 2008-2009 school year but was no longer employed by the District beyond that school year. Thus, [] Jones was dismissed as of, at least, August 10, 2009, without any action by the SRC. The**

18

**dismissal was a dismissal by administrative action, not by action of the SRC. The vote by the SRC on December 15, 2010 was a ratification of [] Jones' dismissal by the administration, which is not permitted.** *See*[] *Pitt*[*e*]*nger*, 305 A.2d at 386.

Secretary September 13, 2011 Dec. at 9-10 (emphasis added). In reliance on the above, the Secretary concluded:

> Based on the dismissal procedures required under the School Code and the relevant case law interpreting those procedures, I have no choice but to find that [] Jones' dismissal was in violation of the School Code. Notwithstanding the consequences, I do not have discretion to ignore the District's failure to comply with the applicable provisions of the School Code and relevant case law. Therefore, **I am obligated to find that the District's dismissal of [] Jones is void** and that he shall be reinstated to his position with the District as a professional employee. In addition, [] Jones shall be reimbursed any amount of compensation he lost due to his improper dismissal.

*Id.* at 12 (emphasis added). This Court is constrained to agree on the well-established constitutional grounds of due process. The retroactive order changing the date of Jones' employment termination to the date of the SRC resolution cannot cure the District's failure to adhere to the mandatory statutory provisions because the SRC resolved to dismiss Jones on December 15, 2010, a date after his hearing and the **same date** the Acting Secretary ruled was the effective date of Jones' employment termination. Accordingly, due to the District's violation of Section 1127 of the School Code, and its consequential denial of Jones' due process rights, the Acting Secretary erred in her partial reversal of the Secretary's decision.

### District's Arguments

After disposing of Jones' arguments, three of the District's issues remain which are summarized as follows: (1) whether the Acting Secretary misinterpreted

*Patchel* and *Pittenger* when she determined that a pre-charge resolution in favor of dismissal was required prior to holding Jones' hearing; (2) whether the SRC would have violated Jones' due process rights if it made a pre-charge determination; and (3) if the Court finds that there were procedural defects, whether the proper remedy is remand.

### *Patchel* **and** *Pittenger*

The District argues that the Acting Secretary misinterpreted *Patchel* and *Pittenger* when she determined that a pre-charge resolution in favor of dismissal was required prior to holding Jones' hearing.

The *Patchel* Court explained that in *Pittenger*, the Court

> held that in the case of a professional employee who had been demoted without a hearing, the later decision of the [school b]oard to ratify the improper administrative action was void. The facts here, however, are easily distinguishable. In [*Pittenger*], the hearing was not scheduled by the [school b]oard until months after the employee's demand for it, and the [school b]oard never saw the charges until the hearing began. There was a clear violation of **Section 1127 of the School Code, 24 P.S. § 11-1127,** which **requires the [school b]oard to *resolve* to demote the employee and to furnish him with a written statement of the charges prior to the hearing**. More importantly, in [*Pittenger*] we explicitly stated the manner in which the school board could have cured the defects in its procedure:
>
> > The [school b]oard only **needed to have passed a resolution** that it had sufficient evidence to support its belief, to demote . . . [the professional employee] by some given date, and therein direct the Secretary and President of the [school b]oard to serve notice upon [the professional employee] of this fact and to advise him of his right to a hearing.

*Patchel*, 400 A.2d at 231-32 (bold emphasis added) (quoting *Pittenger*, 305 A.2d at 387). The District asserts that "[t]hose cases do not *require* the SRC or any other school board in the first instance to resolve, before the issuance of charges, that evidence exists that supports charges that, if true, would support dismissal." District Br. at 25. Rather, the District maintains that "the Court simply explained how a school board might *remedy* a procedurally defective demotion, which occurs when the administration of a school district - as opposed to the school board - 'had already accomplished the demotion' before the board had any notice or knowledge." *Id.*

The District cites *Clark v. Colonial School District*, 387 A.2d 1027 (Pa. Cmwlth. 1978), to support its position. The *Clark* Court held that "[t]he School Code clearly does not require formal school board action authorizing the initiation of charges and the sending of notice of hearing." *Id.* at 1029. Notwithstanding, **after** *Clark*, this Court expressly interpreted otherwise in *Patchel*. The *Patchel* Court expressly opined that it "was [] clear . . . Section 1127 of the School Code . . . requires the [school b]oard to *resolve* to demote the employee and to furnish him with a written statement of the charges prior to the hearing." *Patchel*, 400 A.2d at 232.

Moreover, Section 1127 of the School Code specifically requires that

[b]efore any professional employe[e] having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. **A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe**[e] setting forth the time and place when and where such professional employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges.

21

24 P.S. § 11-1127 (emphasis added). Here, the August 10, 2009 letter was signed by the District Superintendent and the SRC Chairman, but not attested by the SRC Secretary. Thus, even if a resolution was not expressly required under Section 1127 of the School Code, the SRC Secretary was required to attest the written notification, and he did not do so in the instant case.[8] As stated by the Acting Secretary in her opinion, "because the SRC did not issue a resolution stating that it found the charges sufficient to support termination if proved at a hearing, **there is no evidence that the SRC ever reviewed the charges prior to the hearing** that was held in April 2010[,]" as required by this Court's interpretation of the statute. Acting Secretary November 5, 2013 Dec. at 15 (emphasis added). Accordingly, we discern no error in the Acting Secretary's interpretation of *Patchel* and *Pittenger.*

### Pre-Charge Determination

The District also asserts that it would have violated Jones' due process rights if it in fact had made a pre-charge determination. Specifically, the District cites *Lyness* to support its contention that if the SRC had resolved to dismiss Jones prior to Jones' notice of the charges it would have been mixing prosecutorial and adjudicatory functions, thus, at least by the appearance of impropriety, violating Jones' due process rights.

---

[8] The District argues that the District Superintendent had the powers of the SRC Secretary at the time of the August 10, 2009 letter. It explained that "[a]lthough it [was] common knowledge that [the District Superintendent] was the Chief Executive Officer of the District during the time relevant to [Jones'] dismissal, it [was] not common knowledge that she also had the power and authority of the Secretary/Treasurer of the SRC." Acting Secretary November 5, 2013 Dec. at 12. The District's Petition for Reconsideration referred to attachments to prove said authority; however, the attachments were incomplete, i.e., the attachment contained a **proposed** resolution to appoint Arlene C. Ackerman as the District's Chief Executive Officer with the powers and authority of the District's Superintendent and the SRC's Secretary/Treasurer, but no documentation was included evidencing that the resolution was voted thereon and approved. *Id.*

22

In *Harmon v. Mifflin County School District*, 651 A.2d 681, 686 (Pa. Cmwlth. 1994), *rev'd on other grounds*, 713 A.2d 620 (Pa. 1998), this Court expressly held that "[e]ven though [the School Code] requires a school board to terminate an employee and hear the challenge to that termination, *Lyness* simply doesn't apply because the 'interests' involved in the employment relationships are totally different than an independent agency actions regulating individuals."[9] *Harmon*, 651 A.2d at 686.  The *Harmon* Court further explained:

> We have recognized this distinction and determined that the same type of due process requirements do not apply to school boards as they do to other independent administrative agencies.  In *Covert v. Bensalem Township School District, . . .* 522 A.2d 129 ([Pa. Cmwlth.] 1987), this [C]ourt held that the inherent potential for bias on the part of school boards has long been recognized.  We continued:
>
> > The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based.  Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made . . . .  We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions.
>
> [*Covert*], 522 A.2d at 131 (quoting *Lomas v. [Bd.] of [Sch.] Directors of [Nw.] Lehigh [Sch.] [Dist.], . . .* 444 A.2d 1319, 1325 ([Pa. Cmwlth.] 1982)).

*Harmon*, 651 A.2d at 686-87.  Accordingly, there is no merit to this argument.

---

[9] *Lyness* involved the State Board of Medicine.

**Remand**

Finally, the District contends that if this Court finds that there is a procedural defect, the proper remedy is remand not reinstatement and compensation. Specifically, the District contends that: "Here, and only here, is where [*Pittenger*] is relevant, because the Court stated in that case that a school board might remedy a procedural defect by resolving that evidence existed as of a certain date that justified termination." District Br. at 39. The District misconstrues the holding in *Pittenger*. The *Pittenger* Court held:

> It **would have been** a **simple** matter **for the** [**school b**]**oard to have cured the defects at the outset**. The [school b]oard only needed to have passed a resolution that it had sufficient evidence to support its belief, to demote [the petitioner] by some given date, and therein direct the Secretary and President of the [school b]oard to serve notice upon [the petitioner] of this fact and to advise him of his right to a hearing. At this point, [the petitioner] would have had a decision to make: whether to request the hearing or consent to the demotion. **The** [**school b**]**oard did not follow this procedure. Instead, it permitted its administrative staff to demote** [**the petitioner**] **without** [**school b**]**oard action**, and only after [the petitioner's] demand for a hearing, set the wheels in motion for a hearing several months later. As alluded to hereinbefore, the [school b]oard did not know the contents of the charges which had been promulgated by the Principal until the first day of hearing. **This was improper**.

*Id.* at 387 (emphasis added). Clearly, the Court is referring to what could have been done **prior to the hearing**, not after the fact as the District purports.

> This Court in *Neshaminy School District* explained:
>
> [T]he statutory procedures for dismissal 'must be strictly followed and . . . no material deviation therefrom is permissible.' [*Dep't*] *of* [*Educ.*] *v. Oxford Area* [*Sch.*] [*Dist.*], . . . 356 A.2d 857, 860 ([Pa. Cmwlth.] 1976). A

deviation from these procedures constitutes a denial of due process. *Id.* at 860-61.

In *Oxford*, the district superintendent recommended that a teacher who had been arrested for shoplifting be dismissed for immorality. The superintendent testified as a witness at the school board hearing and participated in the school board's post-hearing deliberations. The school board voted to dismiss the teacher. This Court held that the School Code's requirement of 'impartial and unbiased' consideration had been violated, although inadvertently, and remanded to the school board for a new hearing. *Id.* at 861.

In *In re Swink*, . . . 200 A. 200 ([Pa. Super.] 1938), a school board voted to dismiss a teacher for immorality. Thereafter, it sent her a notice stating that she could attend a hearing to convince the board of the reasons she should be reinstated. The Superior Court held that dismissing the teacher without a prior hearing violated the statutory procedure in effect at that time. These deviations from the statutory procedures constituted '**fatal defects**,' making the school board's dismissal an 'illegal' act. *Id.* at 203. Accordingly, the Superior Court reversed the school board's decision.

*Neshaminy Sch. Dist.,* 84 A.3d at 397-98 (footnote omitted; emphasis added). This distinction between the violations in *Oxford* and *Swink* demonstrates the proper manner of disposition in such circumstances. In *Oxford*, the due process violation occurred when the board failed to provide an impartial and unbiased hearing and thus, the violation could be cured with a remand for a new hearing. In contrast, the Superior Court in *Swink* found that the school board's action in employer dismissing a tenured teacher without following the statutory procedure for employment termination constituted a **fatal defect**. The facts herein are similar to those of *Swink*. Notably, the *Swink* Court stated:

Our appellate courts have frequently held that a valid and enforceable contract between a teacher and a school district could be created only by compliance with the strict requirements of the statute. Likewise, in dismissing a teacher, an observance of the procedure prescribed is

25

mandatory. The board of school directors cannot be relieved of the consequences of its failure to observe the essential statutory requirements in dismissing a teacher any more than a teacher can be relieved from showing the vital and essential elements required to make a valid and enforceable contract between the teacher and the school district when such teacher seeks to enforce such contractual obligation. **The procedure which the board adopted was irregular and fatally defective**. There was **no required statement of charges** before dismissal, **no proper notice of hearing** before dismissal, and **no recording on the minutes how each member voted** after such hearing. **The action of the board**, and the affirmance of such action by the court below, **must be reversed for want of compliance with the provisions**.

*Id*. at 204 (emphasis added). Failure to follow the statutory mandatory termination procedures is fatal and requires reversal of the District's action as opposed to remanding (as in *Oxford* which involved the denial of an impartial and unbiased hearing). Here, the specific procedural defects are as follows. Pursuant to well-established case law, the District was required to pass a resolution that it had sufficient evidence to support Jones' employment termination prior to sending him a notice of charges and intent to terminate his employment. The District did not do so. Further, pursuant to the School Code, Jones' notice was required to be attested by the SRC Secretary. It was not.

Most importantly, the date of Jones' notice of charges and hearing date was actually the effective date of Jones' employment termination because it expressly stated: "This is to advise you that we shall recommend to the [SRC] that your **employment with [t]he [District] be terminated effective immediately**. **The [District's] Payroll Department shall be advised to make the necessary salary adjustments**." R.R. at 727a (emphasis added). The fact that his pay was stopped as of that date makes it undisputable that Jones' employment was terminated as of that date which is directly contrary to the School Code's requirement that a hearing pre-

26

date the employment termination. Indeed, the required resolution took place **after** the hearing. As the *Swink* Court held: dismissing a teacher without a prior hearing violated the statutory procedure in effect at that time. These deviations from the statutory procedures constitute '**fatal defects**,' making the school board's dismissal an '**illegal**' **act**. *Id.* at 203 (emphasis added). As in *Swink*, we find the District's failure to follow Section 1127 of the School Code prior to terminating Jones' employment a fatal defect mandating reversal.

When the District discharges a professional employee without full compliance with the School Code, "the employee is entitled to **reinstatement**." *West Shore Sch. Dist.*, 409 A.2d at 480 (emphasis added). "We have repeatedly held that no dismissal of a tenured professional employee can be valid unless the dismissing school district acts in full compliance with the Code." *Id.* "The only conclusion we can reach on these facts is that [Jones'] dismissal was a nullity and that []he must be treated as if h[is] employment were never terminated." *Id.* Thus, Jones is entitled to be reinstated to his former position with back pay, minus his obligation to mitigate damages, until the District properly terminates his employment in conformity with the procedural due process requirements set forth in the School Code.

**Due to the District's violation of Section 1127 of the School Code, and its consequential denial of Jones' due process rights, this Court is duty-bound to reverse the Acting Secretary's** November 5, 2013 **order** discharging Jones as of December 15, 2010, and sustain the Secretary's September 13, 2011 order reinstating Jones. Accordingly, **Jones is reinstated to his position as a professional employee until the District properly terminates his employment in accordance with the School Code** and shall be entitled to the amount of compensation he is due as a result of his dismissal.

## Damages

With respect to Jones' damages, the law is well established that "[a] school teacher is not a public officer, but is an employe[e] of the school district, and the ordinary rules relating to damages for breach of contract of employment apply." *Coble v. Sch. Dist. of Metal Twp.*, 116 A.2d 113, 115 (Pa. Super. 1955) (citation omitted). "Where a teacher is wrongfully discharged, he is to be compensated for loss of salary during such period, but there is no requirement that the school district pay the compensation provided in the contract regardless of set-off or the amount of damages the employe[e] has suffered." *Id.*

> [W]e find no apparent reason why the ordinary rules relating to damages for breach of contract of employment should not be applied. As stated in 47 Am.Jur., Schools, § 145, p. 402: . . . [I]n an action for breach of contract by one employed as a teacher, the measure of damages is the wages which were to be paid, less any sum actually earned, or which might have been earned, by the [teacher] by the exercise of reasonable diligence in seeking other similar employment.

*Id.* at 116. More recently this Court held in *Merrell v. Chartiers Valley School District*, 51 A.3d 286 (Pa. Cmwlth. 2012):

> A plaintiff has a duty to mitigate damages. *Circle Bolt & Nut Co. v. Pa. Human Relations Comm'n*, 954 A.2d 1265 (Pa. Cmwlth. 2008). The duty to mitigate damages, however, 'is not onerous and does not require success.' *Id.* at 1270. All that is required to mitigate damages is to make 'an honest, good-faith effort.' *Id.* at 1271. The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and

responsibilities. Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder.[10]

*Merrell*, 51 A.3d at 298 (citations omitted). Accordingly, we remand this matter to the Secretary of Education to determine the amount of compensation due Jones.

**Conclusion**

**This Court does not condone Jones' conduct**. **However, we resist the urge to permit "bad facts [to] make bad law**." *Doggett v. United States*, 505 U.S. 647, 659 (1992) (Thomas, J., dissenting) (emphasis added); *Berg v. Nationwide Mut. Ins. Co.*, 6 A.3d 1002, 1017 n.3 (Pa. 2010) (Baer, J., concurring and dissenting) (emphasis added); *see also Commonwealth v. States*, 938 A.2d 1016, 1028 (Pa. 2007) (Castille, J., dissenting). Given our conclusion that the District failed to adhere to the mandatory provisions of the School Code when it terminated Jones' employment, and the precedential effect of this Court's decision on subsequent employment actions involving tenured professional employees by this and other school districts, we are constrained to reverse the Acting Secretary's decision.

The Legislature enacted the School Code and provided "explicit procedural safeguards" that it **required** school boards to use when terminating the employment of a tenured professional. *Neshaminy Fed'n v. Neshaminy Sch. Dist.*, 462 A.2d 629, 636 (Pa. 1983). Our Supreme Court clearly and unambiguously stated that there must be **full compliance** with the provisions of the School Code in order to effectuate employment termination of a tenured professional. Were we to affirm the Acting Secretary's order, allowing her review to cure the District's non-compliance with the School Code, we would eviscerate the very statutory protections that the Legislature afforded tenured professionals, thereby contravening legislative intent. In

---

[10] "Jones has, since his dismissal, mitigated his damages by working in a charter school in Philadelphia, and for the Upper Darby public school district." Jones Br. at 29 n.9.

29

essence, we would be amending the statute.  This we may not do.  *See Mohamed v. Dep't of Transp. Bureau of Motor Vehicles*, 40 A.3d 1186 (Pa. 2012).  We may not, and will not encourage school boards and other government entities whose decisions are subject to review to disregard their mandatory statutory duties based on the belief that their malfeasance will be cured.

For all of the above reasons, the Acting Secretary's order is reversed and the matter is remanded to the Secretary of Education with the direction to reinstate Jones and to calculate the compensation which he is due taking into consideration Jones' obligations to mitigate his damages.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The School District of Philadelphia, | : : | |
| Petitioner | : : : | |
| v. | : : | |
| Ellis Jones, | : | No. 2150 C.D. 2013 |
| Respondent | : | |
| | | |
| Ellis Jones, | : : | |
| Petitioner | : | |
| v. | : : | |
| The School District of Philadelphia, | : : | No. 2230 C.D. 2013 |
| Respondent | : | |

# O R D E R

AND NOW, this 2nd day of June, 2016, the Acting Secretary of Education's November 5, 2013 order is REVERSED. Ellis Jones is hereby reinstated to his position as a professional employee of the School District of Philadelphia and the matter is REMANDED to the Secretary of Education for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The School District of : 
Philadelphia, : 
                 Petitioner : 
                  : 
          v. : No. 2150 C.D. 2013
                  : 
Ellis Jones, : 
                 Respondent : 

Ellis Jones, : 
                 Petitioner : 
                  : 
          v. : No. 2230 C.D. 2013
                  : Argued: March 9, 2016
The School District of : 
Philadelphia, : 
                 Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge


**CONCURRING OPINION**
**BY JUDGE SIMPSON**         **FILED: June 2, 2016**


     I concur in the result reached by the Majority. I write separately to reference an issue not fully developed by the parties: the consequences of *de novo* review by the Secretary of Education. An argument could be made that *de novo* review by the Secretary could cure certain procedural problems which occurred at an earlier stage of teacher termination proceedings. However, the School District does not make that argument. Accordingly, I need not address it in this case.

Hopefully, the result here will clarify procedures to be followed in the future in the Philadelphia School District when a professional employee chooses a School Code remedy over a collective bargaining agreement remedy.

                              _____
                              ROBERT SIMPSON, Judge

Judges Cohn Jubelirer and McCullough join in this concurring opinion.