IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal Follman, : 
                      Petitioner : 
                                   : 
        v. : No. 1323 C.D. 2023
                          : Argued: June 6, 2024
School District of Philadelphia : 
(Department of Education), : 
                    Respondent : 

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE                                 FILED: July 17, 2024


Neal Follman (Follman) petitions for review of the October 20, 2023 order of the Commonwealth of Pennsylvania's Secretary of Education (Secretary) which affirmed the decision of the School District of Philadelphia's (District) Board of Education (Board) that dismissed Follman from his employment as a tenured teacher in the District. Upon review, we reverse the Secretary's order, reinstate Follman's employment, and remand to the Secretary for a determination of damages.

## I.    Background

Follman was working for the District as a tenured teacher at Constitution High School (CHS) during the 2020-2021 school year. Reproduced Record (R.R.) at 583a. Due to the ongoing COVID-19 pandemic, the District closed CHS for in-person instruction from March 14, 2020, through May 10, 2021. *Id.* As part of the District's plans to safely reopen schools for in-person instruction, the District

Superintendent, Dr. William R. Hite, Jr. (Dr. Hite), emailed staff on February 22, 2021, to inform them that once the District's schools reopened, the District would test its employees and students for COVID-19 each week. *Id.* at 583a-84a. Dr. Hite also informed staff that the District's testing program would be mandatory for everyone who did not have a medical exemption. *Id.* at 584a.

When the District resumed in-person instruction at CHS, Follman refused to submit to weekly COVID-19 testing. *Id.* On May 7, 2021, Follman completed a COVID-19 Testing Refusal/Exemption Request form, indicating he was refusing the mandatory testing for the following reasons: "EUA,"[1] "[n]ot accurate," "[w]hat is done w/ material?" "[r]elationship w/ Fisher Scientific," and "[y]ou are not my medical provider." *Id.* at 241a. In response, Ronak Choksi (Choksi), interim deputy of the District's Office of Employee and Labor Relations, emailed Follman and notified him "there was insufficient cause for your refusal" and as a result "you will be coded as on unauthorized leave . . . starting Monday, May 10, 2021, and will remain in an unauthorized leave status until you agree to participate in the onsite surveillance testing program and fulfill the testing requirement." *Id.* at 246a.

Follman responded to Choksi's email on May 12, 2021, indicating "I stand by my legal right . . . to refuse my consent. However, I would like to serve my students in person, and provide them with some sense of continuity during this tumultuous time. I would be willing to undergo a temperature check in order to do so." R.R. at 245a-46a. Choksi responded that Follman must agree to participate in the COVID-19 testing program "to return to service." *Id.* at 245a.

---

[1] Follman later testified that "EUA" was an abbreviation for "Emergency Use Authorization," and that he had informed Ronald Choksi that he believed it was "illegal to mandate emergency use products." R.R. at 129a.

On May 19, 2021, Brianna Dunn-Robb, Principal at CHS (Principal), issued an Unsatisfactory Incident report (Report) to Follman. R.R. at 275a. In the Report, Principal explained the District's "multilayer approach" to protect the safety of students and staff. *Id.* Principal then summarized Follman's refusal to submit to COVID-19 testing and his communications with Choksi. *Id.* Principal concluded that Follman's refusal to participate in the District's testing program "constitute[d] an Unsatisfactory Incident." *Id.* at 276a. Principal's recommendation was for the District to terminate Follman's employment. *Id.*

Next, Principal "conducted a first-level investigatory conference on May 26, 2021, to give [Follman] and his union representative an opportunity to respond." *Id.* at 585a. "Follman objected to the testing program and continued to refuse [COVID-19 testing]." *Id.* As a result, Principal continued to recommend Follman's termination from employment. *Id.*

Sheila Wallin, a hearing officer in the District's Office of Employee & Labor Relations (Wallin), then conducted a second-level hearing on June 8, 2021. R.R. at 279a. In addition to restating the background outlined above, Wallin summarized the statements made by Follman and his staff representative as follows:

- [Follman does] not believe the [District] has a right to [his] medical information

- [Follman's] First Amendment[2] and HIPAA[3] rights are being violated

---

[2] U.S. Const. amend I.

[3] The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of titles 18, 26, 29, and 42 U.S.C.).

3

- [Follman is] not refusing to take the test, just not with the [District's] provider, as that would allow the provider to have [his] medical information

- [Follman was] provided the information regarding the testing requirement in a February 22, 2021 email from the [District]

- [Follman] want[s] to return to work; [has] already had COVID; and [his] due process rights have been violated

- [Follman has] been a loyal employee for twelve (12) years and this is an act of injustice

R.R. at 279a-80a. After considering Follman's arguments, Wallin concluded he "provided no evidence beyond [his] comments that [his] First Amendment and HIPPA [sic] rights were violated by the directive for mandatory testing." *Id.* at 280a. As a result, Wallin immediately suspended Follman without pay and recommended the District terminate Follman's employment. *Id.*

On August 19, 2021, the Board adopted a resolution determining "there exists sufficient evidence to support the recommendation of the Superintendent and/or his designee to terminate [Follman's] employment." R.R. at 282a-83a. The Board also directed its secretary and president to inform Follman of his right to a hearing. *Id.* Thereafter, on September 1, 2021, the Board's president and secretary mailed Follman a Statement of Charges and Notice of Right to Hearing (Statement of Charges). *Id.* at 231a-33a. The Statement of Charges included the following information regarding a hearing:

**Hearing Notification**

**Date, Time and Place:** A hearing before the Board of Education presently is scheduled for 10:00 AM on September 13, 2021. If you elect to contest the Administration's recommendation, the hearing will be held at the Education Center for the [District] . . . .

4

**\*\*(Hearing date is based on the date the letter is dated)**

**Timely Written Request:**

**IF YOU WISH TO CONTEST THE <u>RECOMMENDATION</u> FOR YOUR DISMISSAL THROUGH THE SCHEDULED BOARD OF EDUCATION HEARING, YOU MUST CONFIRM THE HEARING, IN WRITING, ON A TIMELY BASIS OR YOU WILL LOSE ALL OF YOUR RIGHTS TO A BOARD OF EDUCATION HEARING.  THE HEARING DESCRIBED ABOVE WILL BE CANCELLED AND YOU MAY BE DISCHARGED WITHOUT A HEARING.**

R.R. at 232a-33a.  On September 7, 2021, Follman's attorney responded by letter and confirmed the hearing.

Thereafter, the District postponed Follman's hearing and changed it to a virtual hearing format.  *Id.* at 586a.  Follman objected to a virtual hearing.  *Id.* Follman also objected to the hearing being conducted by a hearing officer rather than the Board.  *Id.* at 593a.  Follman's objections were overruled, and the District held a virtual hearing on February 28, 2022.  *Id.* at 586a-87a.  Rudolph Garcia, who was "appointed by the Board of Education as a Hearing Officer for this matter," conducted the hearing.  *Id.* at 79a-81a.  Not a single member of the Board was present for the hearing.  *Id.* at 80a.

At the hearing, Follman testified and explained his numerous objections to the District's COVID-19 testing program.  The Secretary summarized Follman's arguments at the Board's hearing as follows:

a.  The testing program was administered by Dr. Hite but the [Board] did not pass a resolution authorizing the testing program.

b.  Mr. Follman believed that the test consent forms available on the [District's] website would allow the disclosure of test results in violation of [HIPPA].

5

    c. Mr. Follman believed that the [type of] test being used by the [District] should not be used to diagnose COVID-19.

    d. Mr. Follman did not trust the company selected by the [District] to administer the COVID-19 tests based on information that he found on the internet.

    e. Mr. Follman wanted his personal doctor to administer a different COVID-19 test instead of the District's onsite testing program.

R.R. at 588a. On August 18, 2022, the Board approved a resolution by a roll call vote[4] of 9-0 to dismiss Follman from his employment as a teacher. *Id.* at 23a-26a.

Follman appealed the District's decision to the Secretary. The Secretary reviewed the record before the Board and permitted the parties to offer briefs and oral argument. *See id.* at 27a-32a. Thereafter, the Secretary determined the District complied with the procedural requirements of the Public School Code of 1949 (School Code), the District established sufficient grounds for dismissal under the School Code, Dr. Hite acted within his authority in mandating COVID-19 testing for staff and students, and the District did not violate Follman's constitutional rights. R.R. at 592a-602a. As a result, the Secretary concluded Follman "was properly discharged from his employment as a teacher for persistent negligence in the performance of duties and willful neglect of duties pursuant to Section 1122 of the School Code[, 24 P.S. § 11-1122,]" and affirmed the District's dismissal of Follman. R.R. at 588a, 603a. Follman timely filed a Petition for Review in this Court.

---

[4] The Board took a single roll call vote to approve the termination of a group of employees. Follman argues the Board's failure to take a separate roll call vote, solely related to his termination, violated his rights under Section 1129 of the Public School Code of 1949 (Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702), 24 P.S. § 11-1129, which requires the Board "by a two-thirds vote of all the members thereof, to be recorded by roll call, [to] determine whether [the charges against an educator] have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe." Due to our resolution of this matter, however, we need not address this issue.

6

## II. Issues

On appeal, Follman raises the following issues for our review: (a) his dismissal should be void because the Board did not enact the COVID-19 testing program; (b) his dismissal should be void because an administrative staff member, not the Board, placed him on leave without pay; (c) the Board violated his constitutional due process rights; (d) the Board violated the Sunshine Act;[5] (e) the Board violated his right to medical privacy; and (e) the Board erred in concluding Follman's actions were grounds for dismissal under Section 1122 of the School Code, 24 P.S. § 11-1122. *See* Petitioner's Br. at 30-32. In addition, Follman renewed his objections to the District's hearing being held virtually and before a hearing officer rather than by the Board. *Id.* at 11-12, 24, 45.

In response, the District argues Follman received all the process he was due, and his actions justified the District's termination of his employment.

## III. Analysis

When reviewing a decision of the Secretary, our standard of review is limited to determining whether substantial evidence supports the Secretary's factual findings, the Secretary committed an error of law, or the Secretary violated the parties' constitutional rights. *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007). While Follman presents several issues for our review, we need not examine each of those issues because the District plainly violated the School Code's procedural requirements in terminating Follman's employment.

We begin our analysis by examining Article XI of the School Code's provisions regarding "Professional Employes." Section 1101 of the School Code defines a "professional employe" as

---

[5] 65 Pa.C.S. §§ 701-716.

7

those who are certified as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of career and technical education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

24 P.S. § 11-1101. A person who is employed in these roles for a limited time is specifically categorized as either a "substitute" or a "temporary professional employe."[6] *Id.* Thus, only permanent professional employees qualify as a "professional employe" under the School Code.

Subarticle (c) of Article XI of the School Code, entitled "Tenure," specifically governs professional employees. *See* Sections 1121-1134 of the School Code, 24 P.S. §§ 11-1121 – 11-1134. Section 1121 of the School Code requires all professional employees to be provided a written contract. 24 P.S. §§ 11-1121. Section 1122(a) of the School Code provides protections for professional employees by limiting the reasons their employment contracts can be terminated, as follows:

> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; intemperance; cruelty; **persistent negligence in the performance of duties; wilful neglect of duties**; physical or mental disability as documented by competent medical evidence, which after reasonable accommodation of such disability as required by law substantially interferes with the employe's ability to perform the essential functions of his employment; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful violation of or

---

[6] A "temporary professional employe" who receives satisfactory ratings at the end of three years of service becomes a "professional employe." *See* Section 1108 of the School Code, 24 P.S. § 11-1108.

failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe . . . .

24 P.S. § 11-1122(a) (emphasis added).

In addition, Section 1127 of the School Code establishes the following specific procedures a school district must follow when terminating the employment of a professional employee:

Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, **such board of school directors** shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and **shall conduct a hearing**. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given **an opportunity to be heard** either in person or by counsel, or both, **before the board of school directors** and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

24 P.S. § 11-1127 (emphasis added).

Section 1128 of the School Code specifies that at a school district's hearing to terminate a professional employee, "[a]ll testimony . . . shall be taken under oath, and **any member of the board of school directors** shall have power to administer oaths to such witnesses." 24 P.S. § 11-1128 (emphasis added). Section 1129 of the School Code establishes voting procedures as follows:

**After fully hearing the charges or complaints and hearing all witnesses** produced by the board and the person against whom the charges are pending, and after full, impartial and unbiased consideration thereof, **the board of school directors** shall by a two-thirds vote of all the members thereof, to be recorded by roll call, determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe. If less than two-thirds of all of the members of the board vote in favor of discharge, the professional employe shall be retained and the complaint shall be dismissed.

24 P.S. § 11-1129 (emphasis added). If the board of school directors votes to terminate a professional employee, the professional employee may appeal to the Secretary. *See* Section 1131 of the School Code, 24 P.S. § 11-1131. The Secretary must then hold a hearing and may consider additional testimony before either affirming or reversing the board of school directors. *Id.* Thereafter, the professional employee may appeal to this Court. *See* Section 1132 of the School Code, 24 P.S. § 11-1132.

In stark contrast to the detailed procedural protections the School Code affords to professional employees, a temporary professional employee who is not given a regular employment contract at the end of three years of service must only be provided "a written statement signed by the president and secretary of the board of school directors." *See* Section 1108(c)(2) of the School Code, 24 P.S. § 1108(c)(2). The School Code does not provide any further procedural protections to these individuals. They may, however, obtain a school board hearing governed by local agency law. *See Acitelli v. Westmont Hilltop Sch. Dist.*, 325 A.2d 490, 492 (Pa. Cmwlth. 1975). If the temporary professional employee is aggrieved by the board's decision, he may appeal to the local court of common pleas. *Id.*

10

Nonprofessional employees of a public school district are also afforded fewer procedural protections than professional employees. The board of school directors is empowered to remove nonprofessional employees for "incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct" "after due notice, giving the reasons therefor, and after hearing if demanded." *See* Section 514 of the School Code, 24 P.S. § 5-514.

The District, in its brief to the Secretary,[7] argued that the Board was allowed to appoint a hearing officer to conduct Follman's termination hearing, provided the Board "review[ed] the hearing officer's findings of fact, conclusions of law and recommendation, [and] then make[s] an independent ruling based on the entire record." R.R. at 503a. To support its position, the District cited *Lewis v. School District of Philadelphia*, 690 A.2d 814, 817 (Pa. Cmwlth. 1997).

In *Lewis*, this Court examined whether a school board could delegate to a hearing officer the task of conducting hearings to dismiss *nonprofessional* employees. *Id.* We began by noting Section 514 of the School Code governs the termination of nonprofessional employees. *Id.* We then determined Section 514's statutory language did not specifically require a hearing before the Board, noting that "[l]ike many Commonwealth agencies, which serve as ultimate fact-finding tribunals, the Board of Education has broad discretion to delegate to hearing officers the task of conducting hearings." *Id. Lewis*, however, was limited to proceedings for nonprofessional employees governed by Section 514 of the School Code, not

---

[7]  In its brief to this Court, the District did not respond to Follman's continuing objection to the Board's delegation of his hearing to a hearing officer. Additionally, while the Secretary acknowledged Follman was arguing the District violated the School Code by holding his hearing "with a hearing officer rather than the [Board]," the Secretary did not directly respond to this issue. *See* R.R. at 593a-94a.

proceedings under the School Code's provisions governing tenured professional employees.[8]

Nevertheless, the Pennsylvania Supreme Court has previously determined that "a lawful and proper hearing may be conducted without all members of the [school board] present to hear the evidence." *Belasco v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh*, 510 A.2d 337, 342 (Pa. 1986) (citing *Acitelli*, 325 A.2d 490; *Boehm v. Bd. of Educ.*, 373 A.2d 1372 (Pa. Cmwlth. 1977)). In *Acitelli*, the school district chose to not renew the teaching contract for a temporary professional employee after he received unsatisfactory ratings. *Acitelli*, 325 A.2d at 491. When the teacher appealed to the Court of Common Pleas of Cambria County (the trial court),[9] the trial court ordered the school district to conduct a hearing pursuant to local agency law. *Id.* at 492. Thereafter, the school board conducted two hearings. *Id.* Six of nine school board members attended the first hearing session while seven attended the second. *Id.* Six school board members were present for a subsequent meeting, and each voted to dismiss the employee. *Id.* Of these six members, "three members had attended both hearing sessions, two had attended only the second session, and one had not attended either session." *Id.*

In *Acitelli*, we rejected the teacher's arguments that this procedure violated his due process rights, because "a quorum of the Board was present at each hearing session and also at the time for the vote." *Id.* at 494. In addition, we noted that "[n]either due process **nor the applicable statutes** impel those who finally vote on

---

[8]   In a post-oral argument filing, the District also asserted it could delegate Follman's hearing to a hearing officer pursuant to this Court's decisions in *Fadzen v. Pittsburgh Public School District* (Pa. Cmwlth., No. 50 C.D. 2018, filed April 4, 2019), and *School District of Philadelphia v. Puljer*, 500 A.2d 905, 907 (Pa. Cmwlth. 1985). Like *Lewis*, however, *Fadzen* and *Puljer* both involved nonprofessional employees rather than tenured professional employees.

[9]   The teacher first requested a hearing before the school board, but the school board denied that request. *See Acitelli*, 325 A.2d at 492.

the status of a teacher to have had direct aural reception of all the evidence." *Id.* (emphasis added). Of critical distinction from this matter, however, the teacher in *Acitelli* was a temporary professional employee, not a tenured professional employee. As a result, the "applicable statute" governing the school board's actions in *Acitelli* was Section 1108 of the School Code, not the tenure provisions in Sections 1121 through 1134 of the School Code.

In *Boehm*, we evaluated a similar situation involving a hearing on the termination of a tenured professional employee under Section 1122 of the School Code. *Boehm*, 373 A.2d at 1373. In *Boehm*, the school board conducted the professional employee's hearing in two sessions. *Id.* at 1374. Six of the school board's 15 members were present at the first hearing session, while 8 members were present for the second hearing session. *Id.* We determined the evidence was properly received in *Boehm* because, in part, "there was a quorum present at the last hearing," and the teacher "failed to object to the absence of a quorum until [closing arguments]." *Id.* We also specifically noted:

> We do not, therefore, determine the issue of whether or not a school board may receive evidence in this type of case with less than a majority of the members present nor do we determine whether or not a school board could appoint one or more members to receive testimony.

*Id.* at 1374 n.4.

In *Kaczmarcik v. Carbondale Area School District*, 625 A.2d 126, 127 (Pa. Cmwlth. 1993), we considered whether the appointment of a hearing officer to conduct a hearing for the termination of a professional employee under Section 1122 of the School Code comported with due process or the School Code. In *Kaczmarcik*, the school district appointed an attorney to act as the hearing officer, to which the professional employee, a vice-principal, objected. *Id.* Although the hearing was

13

conducted by a hearing officer, five of the nine school board members were present for the entire hearing, and a sixth member arrived during the hearing. *Id.* at 129. After reviewing *Acitelli* and *Boehm*, we again cautioned that "[w]e must note that we are not called upon to decide the question of whether an appointed hearing examiner could conduct a valid hearing with no member of the [school b]oard present." *Id.* at 130. Instead, we concluded that "[w]hat we are deciding is that the appointment of the hearing examiner in this case was violative of neither the School Code nor due process **where a majority of the Board was present at the hearing** and where all members voted on the matter." *Id.* (emphasis added).

Here, the Board appointed a hearing officer to conduct hearings to terminate the contract of a tenured professional employee and not a single member of the Board attended the hearing. This violated the unambiguous[10] language of the School Code's provisions governing tenured professional employees.[11]

As fully outlined above, the School Code reflects the legislature's intent to provide heightened procedural protections for professional employees who are facing termination of employment. Section 1128 of the School Code grants the "power to administer oaths to . . . witnesses" at a hearing on the termination of a tenured professional employee to a "member of the board of school directors." 24 P.S. § 11-1128. As a result, if no members of the board of school directors attend the hearing, witnesses cannot be validly sworn in to testify. Similarly, Sections 1127 and 1129 of the School Code plainly require the presence of the Board. *See* 24 P.S.

---

[10] "In the absence of ambiguity in the statutory language, we will not embark on a statutory construction exercise; rather, we will apply the plain language of the statute." *Barringer v. State Emps.' Ret. Bd.*, 987 A.2d 163, 165-66 (Pa. Cmwlth. 2009).

[11] We are not called upon in this matter to decide the question of whether an appointed hearing examiner could conduct a valid hearing with some members of a school board, yet less than a quorum, present.

14

§§ 11-1127 ("such school directors . . . **shall conduct** a hearing" and "such professional employe will be given an opportunity to be heard . . . **before the board of school directors**"); 11-1129 ("[a]fter **fully hearing . . . all witnesses** . . . the board of school directors shall . . .") (emphasis added).

Because not a single member of the Board was present for Follman's termination hearing, we must reverse the Secretary's October 20, 2023 order discharging Follman. *See Sch. Dist. of Phila. v. Jones*, 139 A.3d 358, 375 (Pa. Cmwlth. 2016) ("Failure to follow the statutory mandatory termination procedures is fatal and requires reversal of the District's action as opposed to remanding . . . ."). Furthermore, we must also reinstate Follman's employment with the District. *See id.* at 376 ("When the District discharges a professional employee without full compliance with the School Code, 'the employee is entitled to **reinstatement**.'") (citation omitted).

Follman must be treated as if his dismissal was a nullity and his employment was never terminated. *Id.* Accordingly, he "is entitled to be reinstated to his former position with back pay, minus his obligation to mitigate damages, until the District properly terminates his employment in conformity with the procedural due process requirements set forth in the School Code." *Id.* Regarding Follman's damages, we observed in *Jones* that a tenured professional employee "has a duty to mitigate damages." *Id.* (citation omitted). That duty, is, however,

> not onerous and does not require success . . . [a]ll that is required to mitigate damages is to make "an honest, good-faith effort." The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and

responsibilities. Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder.

*Id.* at 376-77 (internal citations omitted). Therefore, we remand this matter to the Secretary to determine the amount of compensation due to Follman.

## IV. Conclusion

The Board violated Follman's rights to a hearing under the School Code's procedures for the termination of tenured professional employees when the Board's appointed hearing officer conducted Follman's termination hearing without a single member of the Board present. As a result, we reverse the Secretary's October 20, 2023 order discharging Follman and remand this matter to the Secretary with the direction to calculate the compensation Follman is due after also considering his obligation to mitigate damages.

_____

STACY WALLACE, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal Follman,                                    :
                              Petitioner         :
                                                 :
        v.                                       : No.  1323 C.D. 2023
                                                 :
School District of Philadelphia                  :
(Department of Education),                       :
                              Respondent         :

# **O R D E R**

**AND NOW**, this 17th day of July 2024, the October 20, 2023 order of the Commonwealth of Pennsylvania's Secretary of Education (Secretary) is **REVERSED**, and Neal Follman is hereby reinstated to his position as a professional employee of the School District of Philadelphia.  This matter is **REMANDED** to the Secretary for further proceedings consistent with this Opinion.

Jurisdiction relinquished.


_____
STACY WALLACE, Judge